West *v.* Bank of Rutland et al.

Enoch H. West *v.* The Bank of Rutland, The Bank of Manchester, Nathaniel Fullerton and William Henry, and Russell Burke, Administrator of Don Lovell.

### [In Chancery.]

A court of chancery will not ordinarily dismiss a suit on account of any mere informality in the position in which the parties are placed, as orators, or defendants, if all the parties interested are before the court, and a proper case is proved for the interference of the court.

An allowance of a claim by the probate court is not conclusive upon the court of chancery, upon a bill seeking relief against the claim upon grounds of mere equitable cognizance.

If one sign, or indorse, a note, as surety for several joint principals, and one of the principals dies, the surety, having paid the debt, may claim a dividend from the estate upon the entire debt, notwithstanding he may hold *collateral* security for his liability. Where the security is merely collateral, a court of equity will not compel its application, merely for the purpose of reducing a dividend, unless the debtor stands in the relation of a co-surety.

APPEAL from the court of chancery. This was a creditor's bill, brought by the orator, in behalf of himself and others who might join with him, creditors of one Don Lovell, deceased, insolvent; and the orator, after setting forth his own claim, as creditor, alleged, in substance, that Lovell, in his life time, together with Samuel W. Porter and David Brown, for the benefit and at the request of the Village Falls Manufacturing Company, a corporation doing business in Springfield, signed certain notes to the bank of Rutland, and to the Bank of Manchester, and also a note to the defendants, Fullerton and Henry, and that the defendant Fullerton also, for the benefit and by the procurement of the same corporation, indorsed the notes to the banks of Rutland and Manchester, as surety, and those notes were discounted, and the money was received by the corporation; that Fullerton subsequently received from the corporation property and notes, for which he had subsequently realized the money, to an amount exceeding six thousand dollars, to be applied by him upon the notes executed to the banks of Rutland and Manchester and to Fullerton and Henry; that Lovell deceased, and administration was taken upon his estate, and the estate represented insolvent, and commissioners were appointed; that the notes to the banks of Rutland and Manchester and the note to Fullerton and Henry were presented for allowance and were allowed, in full, by the commissioners, and an order for a distribution of the assets of the estate among the creditors, and a dividend upon the full amount of those claims, was made by the probate court,—from which order an appeal was taken, which was pending at the time this suit was commenced; and that Fullerton, although applied to for that purpose, had refused to apply the funds in his hands in payment of those claims, for the purpose of diminishing the amount on which a dividend should be declared, and thereby increasing the amount of dividend ultimately to be received by the other creditors.

And the orator prayed, that Fullerton might be decreed to ren-

West v. Bank of Rutland et al.

der an account of all property and money received by him from the Village Falls Manufacturing Company, on account of the notes indorsed by him for that company and of the note to Fullerton and Henry, and to make application of the same upon those demands, and that the administrator be enjoined from making any payment upon the claims against the estate, until their just amount should be ascertained and determined.

The defendant Fullerton answered, admitting the execution of the notes to the banks of Manchester and Rutland by Porter, Lovell and Brown, and that he indorsed those notes, as surety, as alleged in the bill; but he denied that he had any knowledge, at the time, that the notes were executed for the benefit of the Village Falls Manufacturing Company, or that he executed the notes as co-surety with Porter, Lovell and Brown; but he alleged that Porter, Lovell and Brown were the principal stockholders in that corporation, and that he supposed they were the principals in the notes, and that he believed, at the time, that he was indorsing the notes for their benefit, and as surety for them. He also claimed, that the note to Fullerton and Henry was executed by Porter, Lovell and Brown, as principals, and that it was given for money which they received upon their own account. This defendant averred, that the amount due to him, February 3, 1840, for his liabilities above mentioned, including the amount due upon the note to Fullerton and Henry, was $7300,00; and he admitted, that in June, 1839, he was informed, and, as he alleged, for the first time, that the notes were executed on account of the corporation, and that he then received from the corporation a large amount of funds,—but not sufficient to pay his liability,—as collateral security for the notes set forth in the bill; and he claimed, that he was under no obligation to apply those funds according to the prayer in the bill, nor to surrender them, unless the liabilities were paid, on account of which he received them. The insolvency of Lovell's estate was also admitted.

The answers of the other defendants were filed; but no material question arose in reference to them, and it is unnecessary to set them forth at length. It appeared from all the answers, that Fullerton had deposited in the banks of Rutland and Manchester an amount sufficient to pay his liability to each of those banks, on account of the notes above mentioned, but that, for the purpose, as he

claimed, of preserving his rights, he had directed that no application should be made upon the notes of the amounts so deposited, and the notes were allowed by the commissioners on the estate of Lovell in the name of the banks.

The answers were traversed, and testimony was taken, the substance of which sufficiently appears in the opinion of the court.

The bill was dismissed by the chancellor ; from which decision the orator appealed.

*E. Hutchinson* for orator.

The present controversy is solely between Fullerton and the other creditors of Lovell's estate ; and his rights and liabilities, as the bill is drawn, are to be viewed in two aspects ;— 1, Treating him as co-surety with Porter, Brown and Lovell for the Village Falls Co.,—in which case he would have a claim against Lovell's estate for *contribution* only ;—2, If the evidence should be thought not to sustain that aspect, treating Fullerton as surety for Porter, Brown and Lovell on those notes,—when he would have a claim against the estate for the *full amount* of his payment, after deducting what he has received upon securities furnished him upon the same matters. In the latter aspect, Fullerton admits the receipt, from those securities, of $5160,98 ; and it is insisted, that this amount should be deducted from the amount allowed to the banks, against the estate of Lovell, before any dividend should be declared or paid upon those claims. The claims are a lien upon two funds,—viz. the amount already in Fullerton's hands and the estate of Lovell ; whereas the orators and other creditors have for their claims only a lien upon the estate of Lovell. Equity, in such case, requires, that the creditor, having a lien upon two funds, shall first exhaust that fund upon which the other creditors have no lien, before he shall be permitted to draw from the fund upon which the other creditors have a lien,—it being inadequate. 1 Story's Eq. § 499. *Wiggen* v. *Dorr,* 3 Sum. 414. *Aldrich* v. *Cooper,* 8 Ves. 388.

This bill is properly brought in the name of the orator, who sues in behalf of himself and all the other creditors of the estate, including the administrator as defendant, and charging collusion. It seeks no decree interfering with our probate system, nor with the settlement of the estate in the probate court. The bill would there-

fore have been held good on demurrer. 1 Story's Eq. §§ 423, 581. *Morse et al.* v. *Slason et al.*, 13 Vt. 296. But if the bill should more properly have been brought in the name of the administrator, it is mere matter of *form;* all the necessary parties are before the court, either as plaintiffs, or defendants; there is no demurrer,— and if there had been, the bill would not have been dismissed for that cause. If there is otherwise equity in the bill, a proper decree can be made. *Cannon et al.* v. *Norton et al.*, 14 Vt. 183.

*Tracy & Converse, L. Adams* and *O. P. Chandler* for defendants.

1. No creditor of the estate of Lovell can in this form sustain a suit. The administrator is the only person who has authority to regulate and control the matter sought for by this bill; and if he neglects his duty he is liable on his bond. 3 Vt. 384. *Isaacs* v. *Clark*, 13 Vt. 657. Story's Eq. Pl. 395. If the plaintiff is not legally entitled to the relief sought, the bill will be dismissed on hearing, though a demurrer would have been allowed. Story's Eq. Pl. 352, 355.

2. But if we are wrong in this, we insist that the plaintiff cannot recover, under the circumstances of this case. Fullerton signed as surety for Porter, Brown and Lovell; and he had a right to retain all his securities until he was released from his liability. He was not obliged to apply them on the demands and take a dividend for the balance only. *Moses* v. *Ranlet*, 2 N. H. 488.

3. The bill cannot be sustained, as there is an adequate remedy at law. The probate court is invested with all the power necessary to carry into complete effect all the rights of the parties; and this court will not interfere with the proper and legitimate exercise of the jurisdiction of that court.

The opinion of the court was delivered by

REDFIELD, J. The subject of marshalling securities and assets is one of very frequent recurrence in courts of equity, and is sometimes attended with no inconsiderable difficulty.

In regard to the proper parties in the present suit I have not deemed it important to spend much time. All the parties interested in the subject matter being before the court, if a proper case is made

out for the interference of a court of equity, we would not ordinarily order the suit dismissed in that court on account of any mere informality in the position, in which the parties are presented before us. Suits for a similar object to the one here sought are frequent in the English chancery. They are there brought by the creditors, or by one creditor for himself and as many others as see fit to prove their debts before the master upon the final decree, if one is obtained; and upon the bringing of such a bill the entire distribution of the assets is taken from the Bishop's court, on account of the superior facilities which courts of equity have, for making a final disposition of the matter; and it is there finally ended.

But here the principal and exclusive jurisdiction of all such matters is in the courts of probate. All proceedings, which can be entertained in a court of equity, must be in aid, merely, of the probate court. In cases like the present, where no collusion is alleged between the administrator and the creditors, or any of them, the proper orator is ordinarily the administrator himself. But when collusion is alleged and proved, we have no doubt the bill may be sustained in the name of a creditor. And if the administrator is a party to the suit, and a case is made out in proof, where, if he had brought a bill, he would be entitled to relief, and he declined to stand as orator, the chancellor should consider that, of itself, sufficient evidence of collusion and proceed to pass a decree in the name of the creditor.

We must, then, look at the merits of this case; and the first inquiry is, whether the allowance of the demands is conclusive upon this proceeding in equity. And as the claims were allowed in the names of the creditors and have never been *actually* paid to this day, we do not well see how the allowance of them could have been resisted at law. The relief sought is, it seems to us, exclusively of an equitable character; and such relief is not concluded by a judgment at law. One might have a claim against an estate, which could not be resisted at law, and upon which, nevertheless, he is not in equity entitled to a dividend.

In the present case, if the defendant Fullerton is to be esteemed a co-surety, merely, with Porter, Brown and Lovell, then it would follow, that if the allowance in the names of the creditors is really and exclusively for the benefit of Fullerton, the estate would be en-

titled to have the funds in Fullerton's hands applied to the extinguishment of the common debt, and in that way reduce the allowance to the amount, which Lovell was bound to contribute to the final loss of Fullerton.

But such does not appear to us to be this case. The allowance may be mainly, perhaps exclusively, for the benefit of Fullerton. But we cannot view Fullerton as standing in the same position, as it regards this corporation, with those who applied to him to give his credit. Aside from the fact, that in his answer he expressly denies ever having lent his credit to the corporation, it is almost absurd to suppose that he did or would have done so. It would require very strict proof to convince me, that he did not sign solely upon the credit of the stockholders and directors; and whether he knew that it was the proper debt of the corporation, or not, is not very important; but it certainly is not satisfactorily shown, that he even knew of the existence of the company, at the time he signed.

He then had a full claim upon all the other signers for indemnity. He stood as guarantor for them and might be said to have their joint promise of indemnity. We do not know why such a joint promise should be viewed differently from any joint undertaking; and in all such cases the creditor may proceed against the estate of a joint promissor for the whole debt, or against the surviving promissors. *Devaynes* v. *Noble*, 2 Rus. & Mylne 495. And if he have any security, which is merely collateral to the principal undertaking, this will not prevent his proceeding for a dividend upon the whole debt.

It is true, that if the security has been converted into money, and it is between debtor and creditor, it ceases to be collateral and operates directly as payment; so that the debt is thereby reduced and the creditor can only go for the balance. And if the fund, which is collateral, is such, that the dividend will more than make up the deficiency, then, upon the payment of the whole debt, the creditor must assign. This was the only remedy at the civil law. In England and in this country, in such case, the court of chancery will often times compel the party to apply the funds in his hands and only proceed against the other funds for the balance, and, if the funds are not money, will require them to be reduced to money. But in no case, where the security is merely collateral, will a court

52

of equity compel its application, merely for the purpose of reducing a dividend, unless the debtor stands in the relation of a co-surety.

This case is not, in principle, to be distinguished from that of a mortgage security merely,—which the party may hold, and still take a dividend upon his whole debt.

The decree of the chancellor is affirmed, with costs.