EDWIN R. CLAY *v.* OLIVER SEVERANCE ; OLIVER SEVERANCE *v.* EDWIN R. CLAY ; OLIVER SEVERANCE *v.* EDWIN R. CLAY ; OLIVER SEVERANCE *v.* EDWIN R. CLAY.

*Bankruptcy. Composition. Surety.*

1. A debt is not discharged by composition proceedings under the U. S. bankrupt act, when the name of the creditor and his debt were not p'aced on the schedule of creditors and debts filed in court.

2. The burden is on the party who c'aims that the debt was discharged to prove that the creditor's name was on the schedule ; hence, when a referee's report only states generally that the bankrupt compromised with his credit rs and that the composition offered by him " was accepted by the several creditors," the court will not *presume* that the plaintiff's name was on the list of creditors and debts, although the plaintiff was one of such creditors.

3. One having signed a note with two principals, and having been compelled to pay it, may sustain a several action against either one of the principals, and recover the amount paid.

4. C., H. and S., owning the stock of a corporation, on the first of January C. and H. offered to transfer theirs and their interest in the concern to S. if he would re-·lease them from all its liabilities, he having some time to consider the matter, and ti 1 the first of March to release them. On January 19th he accepted the offer. The company owed C., and he being treasurer and in due course collected $266.80, and applied it on his account. The transaction was fair and open; proper entries were made on the books. S. did not know of the collection when he accepted the offer; but might have known it; and the referee found that "they a'l knew that the business had been prosecuted during the time, and that changes in the assets wou'd occur." Before the first of March S. learned of the collection; and, on finding fault, C. told him that "he would make it up to him." *Held*, that the contract did not relate back to the time of the offer; and that there was no consideration for the promise.

5. The County Court has no power to recommit the report of a referee after the case has passed to the Supreme Court on exceptions.

6. It is only in exceptional cases that the Supreme Court will remand a case to the County Court with direction to recommit the report for further findings, no ap-p'ication having been made in the court below.

7. Two cases pending between the same parties, the court ordered that the judgments be offset, and execution issue for the balance.

ASSUMPSIT. Plea, general issue. Heard on the report of a referee, June Term, 1882, TAFT, J., presiding.

Two cases were referred to the same referee, and he made but one report. The court rendered judgment for the defendant in each case. After the cases had passed to the Supreme Court on exceptions, the said Severance brought two petitions, one to the County Court, and one to the Supreme Court, to have the report recommitted to the referee for further findings. The petition to the County Court was heard December Term, 1882, POWERS, J., presiding. Petition dismissed. The facts bearing upon the several questions in the cases are stated in the opinion of the court, except as to the claim of $266.80. As to this the referee found with other facts:

"Early in January, 1874, the referee is not satisfied as to the exact day, Clay and Hammond made a proposition to Severance that if he would clear and release them from all liabilities on account of the Paper Mill Company, including all paper outstanding on which they were holden for money to run the paper mill, they would give to him all their stock and interest in the property of the said Paper Mill Company, subject to the mortgage claims

thereon." . . . (The offer was accepted January 19, 1874.) "When said arrangement of January 19, 187{, was made, nothing was said as to the assets of the company being the same as they were when the proposition was made early in January. They all knew that the business had been prosecuted during the time, and that changes in the assets would occur ; and the referee fails to find that there was any agreement in the arrangement of January 19, 1874, that the same should reach back to the time the proposition was made. Nothing was said about it. The $266.80 collected of the St. Albans Advertiser Company, January 9, 1874, ceased to be assets of the Paper Mill Company before January 19, 1874." . . . . . . ,

"There was no secret about this collection. Hammond knew of it the next day, January 10, 1874, and the matter was treated as a company transaction. It did not appear that anything was said about this collection at the time the contract and writings of January 19, 1874, were made, but Severance supposed this claim was outstanding ; and the referee is unable to find that Severance then knew of the collection, but does find that Severance could have learned of it by examining the books, and by inquiry at that time ; and that he was informed of it before March 1, 1874, the time limited for Severance to procure Clay's and Hammond's release."

*Stewart & Wilds* and *L. D. Eldredge*, for Clay.

The obligation on the part of Hammond and Severance to indemnify Clay was joint and *several*. *Apgar* v. *Hilur*, 24 N. J. L. (4 Zab.) 812. The non-joinder was pleadable only in abatement. R. L. s. 939 ; *Hyde* v. *Lawrence*, 49 Vt. 361 ; *Hardey* v. *Cheney*, 42 Vt. 417 ; *McGregor* v. *Balch*, 17 Vt. 563 ; 36 Vt. 31 ; Chit. Pl. 202. The composition proceedings are no bar, as Clay's name was not on the schedule of creditors. In re *Becket*, 12 B. R. 201 ; In re *Odell*, 16 B. R. 501 ; 14 B. R. 481 ; *Nat. Bank* v. *Wood*, 53 Vt. 497.

*L. E. Knapp* and *J. M. Slade*, for Severance.

Clay having paid the note as surety should have joined the principals. *Babcock* v. *Hubbard*, 2 Conn. 536 (11 U. S. Dig. 123, s. 426) ; *Riddle* v. *Bowman*, 27 N. H. 236. But at most there being two principals, Clay can recover only one-half

*Fletcher* v. *Grover*, 11 N. H. 368; *Henderson* v. *McDuffe*, 20 Am. 557, and n.; Wood's Mayne Dam. 431, s. 426; *Mills* v. *Hyde*, 19 Vt. 59; *Stirling* v. *Forrester*, 3 Bligh. R. 591. Composition proceedings no bar, as it does not appear that Severance was included in the list of Clay's creditors. *Scott* v. *Olmstead*, 52 Vt. 214.

The opinion of the court was delivered by

VEAZEY, J. Four causes between the same parties were heard together. Two of them were referred, and the referee heard them together and made one report on both. The case *Clay* v. *Severance* is an action of assumpsit in the common counts with a special count on a promissory note. The case *Severance* v. *Clay* is also assumpsit in the common counts. Each party pleaded the general issue and composition with creditors under the United States bankrupt law. Severance did not name Clay as a creditor in his statement of creditors and debts filed in the composition proceedings, therefore by the terms of the bankrupt act, section 5015, Revised Laws (U. S.), Clay's debt was not discharged and is not barred by the composition.

The referee does not state whether Clay named Severance in his list of creditors and debts filed in his composition proceedings. The report only shows Clay had compromised with his creditors in bankruptcy. Clay's debt to Severance accrued before Clay resorted to bankruptcy. To defeat this debt it was not enough for Clay to show he had compromised with his creditors; the burden was on him to show he included Severance in his schedule of creditors filed in the composition proceedings, not on Severance to show his name was *not* on the list. The bankrupt act only purports to discharge the debts of the bankrupt to those creditors specified in the schedule which the act made it the duty of the bankrupt to file. Under composition proceedings the bankrupt receives no general discharge. The statement in the referee's report that the composition offered by Clay " was accepted by the several creditors," and " confirmed," &c., was not sufficient to warrant the court in presuming and holding that Severance was named in the schedule of creditors and accepted the

offer.   Upon the report, therefore, both these cases stand as though there had been no composition in bankruptcy.

The specification in each case contained several items.   The only item in dispute in the case of Clay against Severance is the item of $114, which Clay had paid on a promissory note which he had signed as surety for Severance and one Hammond as principal.   Severance objects to this item on the ground that Clay cannot maintain a several action against him, Severance, and can only recover in a joint action against him and his joint principal, Hammond.   This note, which ran to one Bingham, was proved against Clay's estate in bankruptcy, and in the composition Clay paid the amount named, $114.   No other defence is claimed than as above stated.   The question is whether, where a surety for two or more principals pays the debt, the law raises an implied obligation against each principal severally to reimburse the surety, or a joint obligation only.

Brandt on Suretyship and Guaranty, section 178, states the rule as follows: " If the surety is bound for several principals, he is entitled to recover from any one of them the whole of what he has paid.   Each of the principals is debtor for the whole of the debt to the creditors, and the surety, being liable for each of them, has, by paying the debt, freed each of them from the creditors' claim for the whole, and consequently has a right to recover the whole amount from any one of them "; and he cites several cases in support of this proposition.   In *Apgar's Administrator* v. *Hiler*, 24 N. J. L. (4 Zab.), 812, the court below charged the jury that whether the original note be joint or several, the liability of the principals to the surety is several; each is liable for the whole amount.   The Court of Errors and Appeals in review said: " If the surety is bound for several principals, he is entitled to proceed against each of them for the recovery of the whole of what he has paid.   Each of the principals is debtor of the whole debt in favor of the creditor ; and the person being surety for each of them has, by paying the debt, liberated each of them from the whole, and consequently has a right to conclude *in solido* against each of them for the reimbursement of the whole of what he has paid, with interest from the day of the demand.   This rule pre-

vails both in civil and common law." In *Dickey* v. *Rogers*, 9 Martin (La.), 588, it was held that where there are several joint debtors, the surety has the right to call on each of them for the whole amount of his obligation.

In *Overton* v. *Woodson et al.* 17 Mo. 453, it was held that where two executors or administrators unite in one bond they are jointly and severally liable as principals to indemnify the surety who has been subjected to the payment of money by the default of one of them.

In *Duncan* v. *Keiffer*, 3 Binney, 126, the court held to the same doctrine in case of a bond between individuals. Baylies on Sureties and Guarantors, 461, says: "Having borne the burden of his principals, he stands, in many respects, in the place of a creditor, and may proceed against one or all of them for the whole amount paid." This was said upon the authority of a case in the 14th Barb. 32, where a surety had paid a joint judgment against two principals and himself. See also Poth. Tr. des Oblig. p. 2, c. 6, s. 7, art. 1, s. 5; Theo. Pr. & Sur. 169, Ed. of 1836; 17 Ves. 22; *Riddle* v. *Bowman*, 27 N. H. (7 Foster), 236; *Jones* v. *Fitz*, 5 N. H. 444.

The above authorities do not all meet the precise question in this case, but they show the tendency of decisions so far as they have gone. The rule as above indicated seems to be just, and is in conflict with no authority as far as we have observed. It is in analogy with our decisions so far as the court has had occasion to decide. In *West* v. *Bank*, 19 Vt. 403, it was held that if one sign, or indorse, a note, as surety for several joint principals, and one of the principals dies, the surety, having paid the debt, may claim a dividend from the estate upon the entire debt, notwithstanding he may hold collateral security for his liability. *Devaynes* v. *Noble*, 2 Rus. & Mylne, 495.

The well-settled doctrine that a surety is entitled to be subrogated to all the rights and remedies of the creditor, including his securities, against the principal whose debt he is compelled to pay, is said to rest not in contract, but upon principles of natural justice and moral obligation. Fell's Law of Guaranty & Suretyship, 3 Ed. p. 275. Although the form of the obligation of the princi-

pals to the payee may have been such as to compel the payee to proceed against them jointly, yet they were each bound to see the note paid and thereby release the surety from liability. Having failed in this duty and the surety having paid the debt, we think it accords with sound rules and with authority to hold that the promise raised by implication of law, which is the foundation of the action of assumpsit by the surety against the principal for money paid to his use, is several as well as joint, where there are more than one principal.

The only item in dispute in Severance's specification against Clay is an item of $266.80. The facts pertaining to this item, as stated in the report, are all material. From them it appears that Clay, Severance and Hammond owned all the stock of the Middlebury Paper Company in January, 1874; and early in this month Clay and Hammond offered Severance to transfer all their stock and interest in the company to him if he would assume their liabilities for the company. He took time for consideration and investigation to see how he could settle with the creditors of the company, and on the 19th of January accepted the proposition. In the mean time the business of the company was going on, and Clay, who was the treasurer, collected, in due course, said $266.80 from the St. Albans Advertiser Company. When the contract between said parties was closed Severance did not know this account had been collected, but supposed it was one of the assets. Clay had been individually paying out a large amount to the operatives of the company through November and December preceding, for which the company owed him, and when he collected this money he applied it on his account against the company. Severance now claims, under all the facts detailed in the report, that he is entitled to recover this sum of Clay; that the contract under which he took Clay and Hammond's stock and interest should have relation back to the time of the offer and he thereby have the benefit of all the assets of the company at that time, instead of at the time the contract was closed. We think the claim is not well founded. The transaction of collecting this account was open; proper entries were made on the book; Hammond knew of it, and Severance might have known about it; he must have

known how the business was kept along, and how the operatives were paid, and that the condition of the company as to assets and liabilities was constantly changing; he made no provision for any past operation of the contract, therefore by its terms it applied as of its date ; the transaction was quite large, and so far as appears was " open-handed " and fair, all parties standing on an equal footing. We see no occasioun or propriety in giving it any different operation from what the parties in terms provided. It appears that Severance was to have until the *first* of March of that year, 1874, to carry out his agreement to get Clay and Hammond released from their liabilities for this company, their stock in the mean time to be held by a trustee ; also that after Severance learned of this collection by Clay and before the *first* of March, he found fault with Clay about it, and Clay once told Severance before the first of March " he would make it up to him." Severance now insists he is entitled to recover on the strength of this promise. That depends on whether there was any consideration for it. We think the facts stated in the report fail to show any legal or moral obligation resting on Clay to pay this money to Severance when he made this promise. No other consideration is claimed. It does not appear that Severance relied on it. The inference is the other way. This item should be disallowed.

The other two cases are petitions, one to the County Court, and one to this court, to have the report recommitted to the referee to find and report whether Clay included Severance in his schedule of creditors filed in his composition proceedings. The views above expressed show there was no necessity for recommittal for this purpose. The County Court properly dismissed the petition. It was not made in that court until after the case had passed on exceptions to this court. The report was not then within the control of the County Court. Section 1392 of the Revised Laws provides that when the judgment of a county court upon a question of law is to be revised by the Supreme Court, the original files and papers shall be removed to the Supreme Court.

As to the other petition made to this court. In a proper case this court would remand a case to the County Court with direction to recommit a report for further findings. It would probably be

only in exceptional cases that this power would be exercised. There is no necessity to exercise it here, and it is doubtful whether it would be exercised in behalf of a party who, situated as the petitioner was, had not made his application sooner.

As to the case of Severance against Clay which was referred, the judgment of the County Court is reversed, and judgment for the plaintiff for the amount found by the referee with interest, less the item $266.80.

As to the case of Clay against Severance which was referred, the judgment of the County Court is reversed, and judgment for the amount found by the referee with interest. And as to these judgments it is ordered that they be offset against each other, and execution issue for the balance.

As to the petition filed in the County Court, the judgment of that court is affirmed with costs. As to the petition filed in this court, the same is dismissed without costs.