# THE PEOPLE OF THE STATE OF NEW YORK *v.* E. REMINGTON & SONS.

## IN THE MATTER OF THE PROVING OF THE CLAIM OF THE ILION NATIONAL BANK.

*Insolvent corporation — claimants against, holding collateral security — amount thereof not deducted from the claim as proved — rule as to collateral security received from a third party.*

Upon an appeal from an order confirming the report of a referee, appointed under the statute to take proof of the claims against an insolvent corporation, it appeared that the whole debt which one of the claimants, the Ilion National Bank, held against the insolvent corporation, at the time the receivers were appointed, amounted to the sum of $195,525.56. It also appeared that the said bank held securities received from the corporation sufficient to satisfy a part of such indebtedness. The receivers of the corporation claimed that the value of such securities should be first applied towards the discharge of the bank's claim, and that the balance only should be proved as a debt upon which dividends should be allowed.

*Held,* error; that both the weight of authority and the better reasoning sustained a contrary rule.

Cases bearing upon this question collated by PARKER, J., and considered.

A portion of the securities held by the bank were derived from other parties than the insolvent debtor.

*Held,* that as to those it was well settled that no part of them need be applied or deducted before proving the debt.

*Ex parte Bennet* (2 Atk., 528) followed.

A small part of the securities held by the bank had been converted into money by a sale thereof, made prior to the hearing before the referee, but after the appointment of the receivers. It was contended that, as to such portion, the money received should be deemed a payment *pro tanto,* and the balance only of the claim be allowed as a debt against the insolvent.

*Held,* that as it did not appear that any of the money received from the sales of the pledged property had been applied as a payment upon the debt, either by agreement with the receiver, or by any claim to that effect made by the bank, that it should be considered as still held as collateral to the debt rather than be deemed a payment thereon.

APPEAL by Addison Brill and Albert N. Russell, the receivers of E. Remington & Sons, the defendant corporation, from an order granted at a Special Term, held in Onondaga county, which was entered in the office of the clerk of the county of Herkimer on the 1st day of July, 1889.

This order of the Special Term, confirmed the report of a referee appointed under the statute to take proof of claims against defendant, an insolvent corporation. On the hearing before the referee it appeared that the whole debt or demand which the Ilion National Bank held against the insolvent corporation, at the time the receivers were appointed, amounted to the sum of $195,525.56. It held, however, securities received from the corporation sufficient to satisfy a part of such indebtedness, and the receivers of the corporation claimed that the value of such securities should be first applied toward the discharge of the bank's claim, and that the balance only should be proved as a debt upon which dividends should be allowed. The referee refused to so hold, and allowed the bank to prove its whole debt as a claim against the corporation. The Special Term confirmed such ruling, and the receivers brought this appeal.

*William Kernan,* for the receivers, appellants.

*A. M. Mills* for the Ilion National Bank, respondent.

PARKER, J.:

The main question presented by this appeal is, whether a creditor of an insolvent debtor, who has received from the debtor collateral securities for the debt sufficient to satisfy a portion thereof only, may prove against such debtor's estate the whole of his demand and be allowed a dividend thereon, or whether he must deduct from such debt the value of such security, and be allowed a dividend only upon the balance remaining. In the distribution of an insolvent's estate, under the general bankrupt law, this question was controlled by the provisions of the act itself. But in the proceedings, under which the assets of this corporation came into these appellant's hands for distribution, there is no statutory provision regulating the subject, and the solution of the question must be found by applying to it the principles which usually govern courts of equity in similar matters. It is surprising that this precise question has not been settled by judicial authority in this State, but with the exception of one or two decisions at Special Term, the courts do not seem to have been called upon to decide it. In the English courts decisions may be found sustaining either claim, and in this country the rule differs in different States.

It is contended, on the part of the appellants, that when a court of equity assumes to marshal the assets of an insolvent debtor its purpose is to make " a just and equitable " distribution of the same among the creditors, without preference to any, and that such a distribution *is* made to the creditor holding security, if he is allowed to apply the whole of his security to the satisfaction of his debt, and to share for the *balance* equally with the other creditors. They argue that, as to his security, he gets by this method all the benefit from it that he could acquire under the other rule, viz., satisfaction *pro tanto* upon the amount of his debt, and that as to the fund in court for distribution, inasmuch as he has no specific lien upon it, and as his actual debt is only the balance remaining after applying the security, he should share from it with other creditors in that proportion only ; and such is the general line of argument in all the authorities sustaining such a rule.

But, by taking collateral security, a creditor gives up no part of his demand, nor any of the methods for collecting it which the law recognizes and allows. He may still proceed to judgment and full

satisfaction against the debtor's general estate, notwithstanding that he holds the collaterals; and the debtor has no control over such collaterals nor over their application, save the right to redeem them by paying the whole indebtedness. The debt stands for the full amount. The collaterals are but an incident to it. (1 Story's Equity Juris., § 640; *James* v. *Hamilton*, 2 Hun, 630; Id., 63 N. Y., 616; *First Nat. Bk.* v. *Wood*, 71 id., 405–411.) Such being the creditor's legal rights as against his solvent debtor, there is no just reason why he should be deprived of such rights when the debtor becomes insolvent, and the court undertakes a just and equitable distribution of his estate.

It is true the rule for which the appellants contend, gives to the creditor the benefit of his security to the full amount thereof, but it deprives him of his standing as a creditor, in relation to his claim against the residue of the debtor's estate. Suppose the security be sufficient to satisfy fifty per cent of the creditor's debt, and a dividend of the insolvent's general estate estimated upon the creditor's whole debt, would pay the other half. Evidently, if he be allowed to prove against such estate but one-half of his debt, he is compelled to lose a portion thereof for the benefit of others; but if he may prove his whole debt, and collect from the general estate his *pro rata* share thereof, he stands in relation to that fund equal with other creditors, but no more than equal, and the advantage which he has of resorting to his security to make up any deficiency is no more of an advantage than his contract with his debtor and his legal rights entitled him to.

The principle which allows a creditor to retain such an advantage is well settled in analogous cases in this State. Thus, when a creditor has a right to resort to two funds for the satisfaction of his debt and another creditor has a right to resort to only one of them, equity will not require the former to first resort to the fund on which the other has no claim, if such resort would operate to prejudice the rights of the first creditor, nor if there was any reasonable doubt of the sufficiency of the one fund to satisfy his debt. And such is the rule, not because the creditor has by superior diligence acquired a *specific* lien on *both* funds, as suggested by appellants' counsel, but because equity recognizes and sustains his legal rights so far as is necessary to give him the full benefit thereof.

(1 Story's Eq. Juris., § 633; *Brinkerhoff* v. *Marvin*, 5 Johns. Ch., 320; *Evertson* v. *Booth*, 19 Johns., 485–493; *Reynolds* v. *Tooker*, 18 Wend., 591–594; *Herriman* v. *Skillman*, 33 Barb., 378; *Bernhardt* v. *Lymburner*, 85 N. Y., 172.)

Referring to the athorities upon the precise question before us, it appears that the courts of Massachusetts sustain the appellants' position on the ground that it is a reasonable one, and more consistent with the nature of the contract under which security is taken. They proceed upon the theory that by taking security the creditor relies upon the general credit of the debtor, only to the extent of the balance remaining after applying the security to the satisfaction of the debt. (*Amory* v. *Francis*, 16 Mass., 308; *Farnum* v. *Boutelle*, 13 Met., 159.) But in our judgment such is not the nature of the contract. The creditor still relies upon the whole estate of his debtor for his full debt, and looks to his collateral to supply any deficiency.

In the English cases which sustain the appellants' position, the rule is said to be grounded on the principle that when one creditor has two funds to which he may resort, and another has only one of them, the first creditor should first resort to the one to which the other creditor cannot apply. (*Greenwood* v. *Taylor*, 1 Russ. & My., 185; *Brocklehurst* v. *Jessop*, 7 Sim., 438.) But manifestly this overlooks the well-settled exception above referred to, that in no case will such rule be applied when it would operate to the prejudice of the creditor who is asked to make such an application. In *Wurtz* v. *Hart* (13 Iowa, 515), the court followed the general bankrupt law as being a just and reasonable rule without giving the subject much consideration. In Rhode Island the rule contended for by the appellants was first held to be the correct one (*Knowles' Petition*, 13 R. I., 90), but, subsequently, in *Allen* v. *Danielson* (15 id., 480), that conclusion was directly overruled as being manifestly unjust and as having been made hastily and without due consideration; and in *Third National Bank of Baltimore* v. *Lanahan, Trustee, etc.* (66 Md., 461), as in *Midgeley* v. *Slocomb* (2 Abb. [N. S.], 275), the decision turned upon the language of the assignment rather than on the application of any rule of equity. On the other hand, in the Supreme Court of the United States, it is said to be "a settled rule of equity that a creditor holding 'collaterals is not bound to apply

them before enforcing his direct remedies against the debtor," and such rule was there appplied in favor of a creditor holding collaterals against an insolvent debtor's estate. (*Lewis, Trustee, etc.,* v. *United States,* 92 U. S. Sup. Ct. [Lawyer's Co-operative ed., 513]; [2 Otto], 618.) See, also, the following authorities to the same effect: *Mason* v. *Bogg* (2 Myl. & Craig, 443); *Putnam* v. *Russell* (17 Vt., 54); *West* v. *Bank of Rutland* (19 id., 403); *Moses* v. *Ranlet* (2 N. H., 488); *Findlay* v. *Hosmer* (2 Conn., 350); *Logan* v. *Anderson* (18 B. Monroe, 114); *Patten's Appeal* (45 Penn. St., 151); *Graeff's Appeal* (79 id., 146); *Bates* v. *Paddock* (9 N. E. Rep., 257); *Matter of Bates* (118 Ill., 524); *Jervis* v. *Smith* (7 Abb. [N. S.], 217).

We conclude, therefore, that both the weight of authority and the better reasoning sustain the rule adopted by the referee in these proceedings.

A portion of the securities held by the bank were derived from parties other than the insolvent debtor. As to those, it is well settled that no part of them need be applied or deducted before proving the debt. (*Ex parte Bennet,* 2 Atk. 528; Bishop on Insolvent Debtors, § 356.)

A small part of the security held by the bank had been converted into money by a sale thereof prior to the hearing before the referee, but after the appointment of the receivers, and the appellants contend that as to such portion the money received should be deemed a payment *pro tanto,* and the balance only of the claim be allowed as a debt against this insolvent. But we think that the condition of the parties in relation to the insolvent's estate, at the time it passed into the custody of the court, should determine their respective rights. What was held as collateral then should be deemed so held until the final adjustment between the receivers and the creditors, and the creditor should not be allowed, except by arrangement with the receivers, to in any way change the character of such holding. Otherwise he might prejudice the rights of the receivers and lessen his own responsibilities to them. So, also, it might easily happen that one creditor would be forced by the exigencies of a market to convert his securities into money before opportunity of proving his debt occurred, while another, from prudential reasons, would be compelled to retain his unsold, and thus creditors having equal equities would be placed in unequal relations to the fund for distribution.

It does not appear that any of the money received from the sales of the pledged property has been applied as a payment upon the debt, either by agreement with the receivers or by any claim to that effect made by the bank alone. We think, therefore, that it should be considered as still held as collateral to the debt, rather than be deemed a payment thereon.

The referee adopted the proper rule, and the order of the Special Term should, therefore, be affirmed.

MARTIN and MERWIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements, to be paid out of the funds in the hands of said receiver.