## SHAIN v. GOODWIN.

*(Circuit Court, N. D. California. May 4, 1891.)*

**1. GAMBLING CONTRACT—PROMISSORY NOTES.**
　　Pen. Code Cal. § 330, declares "any banking game played with cards, dice, or device for money" an offense punishable by fine, and Civil Code, § 1667, declares any contract contrary to the policy of express law, or "contrary to good morals," to be unlawful. *Held*, that notes given for a debt created by throwing dice are invalid between the original parties or purchasers with notice.

**2. SAME—INNOCENT HOLDER—BURDEN OF PROOF.**
　　In an action brought by the indorsee of such notes, the invalidity of their origin having been shown, the burden is cast upon the plaintiff of showing that he took them for value, and without notice of the illegality of the consideration, and, where the evidence on this subject is evasive, uncertain, improbable, and unsatisfactory, a judgment will be rendered for defendant.

At Law.

*Vincent Neale*, for plaintiff.

*Joseph D. Redding*, for defendant.

HAWLEY, J. This action was brought by plaintiff to recover the amount due upon two certain promissory notes, each for the sum of $1,500, one dated July 5, 1884, the other October 5, 1884, and each made payable within 90 days after date. The notes were signed by the defendant, and made payable to Edmond Morris, or order. Each note is indorsed as follows: "*Edmond Morris:* Without recourse, pay to Joe. E. Shain, or order.   T. H. CUNNINGHAM." The cause was tried before the

court without a jury. Plaintiff offered the notes in evidence, and then rested. Defendant offered in evidence the deposition of Edmond Morris, taken on behalf of the plaintiff. This was all the testimony taken in the case.

It is contended by the defendant that the notes were given for a gambling debt, and that the burden of proof is upon the holder of these notes to show that he received them before maturity for a valuable consideration, and without notice of any illegality. With reference to the consideration of these notes, Morris testified upon his direct examination as follows:

"*Question.* What was the consideration for these notes, Mr. Morris? *Answer.* Well, it was a debt that he owed me. *Q.* How was that debt evidenced, if evidenced at all, before these notes were given? *A.* Well, it was some money that I winned from him. I had a gambling transaction with him, as you usually call it."

And upon cross-examination as follows:

"*Question.* What was the consideration for these notes? Was it that gambling? *Answer.* It was money that he had winned from me, and I had winned a portion of it back, and he gave me these notes in satisfaction of the debt."

The facts in relation to the gambling between these parties is given by Morris as follows:

"*Question.* Now, you have stated that the notes sued upon in this action were for money you won from Goodwin in a gambling transaction. State what that gambling transaction was? *Answer.* Well, about the 3d of July, in the morning or night, him and me were gambling, that night and the night before, and he had beaten me out of eighteen hundred dollars dealing faro, and two hundred dollars playing casino, and I paid him his money, and he went away,—paid him two thousand dollars,—and after he went away I happened to go over to the Palace Hotel, an hour after this transaction took place, as near as I can recollect, and he was in the bar-room of the Palace Hotel, and we naturally began to gamble again, and we shook dice,—shook one dice,—for two hundred dollars a shake, and it resulted, eventually, of my beating him out of five thousand dollars."

It appears that before defendant signed the notes in question he had given due-bills for the amount, and these due-bills were surrendered, and the notes executed in proper and due form. The testimony of Morris relating to the settlement is as follows:

"*Question.* After winning this five thousand dollars, state how it was settled. *Answer.* It was settled by his paying me one thousand dollars in cash. That morning he paid me one thousand dollars in cash, and he said he would see me the next day, and settle the balance. The next day I didn't see him, which was the 3d of July, and on the 4th of July he hunted me up himself, and gave me these notes, and asked me to take these notes the way that he wanted it done."

Section 330, Pen. Code Cal., provides that "any banking game played with cards, dice, or any device, for money,   *   *   *   is punishable by fine." Section 1667 of the Civil Code provides that a contract which is contrary to the policy of express law, or "contrary to good morals," is not lawful.

Conceding, as claimed by plaintiff, that the supreme court of California in *Corbin* v. *Wachhorst*, 73 Cal. 411, 15 Pac. Rep. 22, decided that throwing dice for money is not unlawful, and was not such a game as was forbidden by any statute of this state, still the question remains whether, upon the facts of this case, which are dissimilar in several essential features from *Corbin* v. *Wachhorst*, the contract between the parties to throw dice for money, upon which the consideration of the notes is based, was not unlawful under the provisions of the Civil Code. In *Corbin* v. *Wachhorst* the parties plaintiff and defendant, with two other persons, played at the game of throwing dice, and during the game defendant borrowed small amounts of money, which in the aggregate amounted to $350, and when the game closed the defendant signed a note, and delivered it to plaintiff, for the amount thus borrowed. The decision sustaining the validity of the note thus given is based upon the facts that the money was loaned in good faith, and that it did not appear that the plaintiff won any of the money, or that defendant lost any of it, in the dice throwing. The court said:

"No part of the consideration of the note was money won by plaintiff from defendant. It was all for money loaned by plaintiff to defendant, which plaintiff took out of his money drawer and his safe. Plaintiff himself was not winner at the game, and of the players it does not appear who was winner or loser when the game ended, about ten o'clock. * * * Admitting that the plaintiff knew the money which the defendant borrowed from him was to be used afterwards in the game of dice throwing, he did not loan it with a view to have it used in a game declared by law to be unlawful, and was entitled to recover on a contract, the consideration of which was money loaned. It is claimed that the Civil Code provides that a contract is not lawful when it is 'contrary to good morals.' Conceding, without deciding, that a note given for money lost at dice throwing is a contract based upon 'an immoral consideration,' and still the defendant was liable on the note for he borrowed money from the plaintiff, and gave the note therefor, and, if the defendant used it in playing at dice throwing, as he did, and the plaintiff knew it would be so used when he loaned it, and the plaintiff, as he did, loaned the money in good faith to the defendant, who knew what he was doing, and the plaintiff is not shown to have won the money for which the note was given, nor the defendant to have lost it, in the game, the latter is liable on the note. *Poorman* v. *Mills*, 39 Cal. 345. For *non constat* from the findings but what the money loaned in good faith to a man competent to contract may still be in his possession, or have been used for some other purpose to his advantage."

In this case it clearly appears that the contract between the defendant and Morris, to whom the notes were given, was to play at the game for $200 per shake, and the defendant lost and Morris won the full amount of money for which the notes were given. This was the only consideration for the notes. The contract was "contrary to good morals," and therefore illegal, under the express provisions of the Code.

In *Scott* v. *Courtney*, (7 Nev. 421,) which was an action to recover money won by plaintiff and lost by defendant at the game of faro, a game licensed by the statute of that state, the court held that the action could not be maintained. In the opinion the court said:

"In the United States wagering and gaming contracts seem to have met with no countenance from the courts, and consequently in nearly every state they are held illegal, as being inconsistent with the interests of the community, and at variance with the laws of morality.   2 Smith, Lead. Cas. 343."

In *Irwin* v. *Williar*, 110 U. S. 499, 4 Sup. Ct. Rep. 160, the supreme court, in discussing the question whether dealing in futures by means of contract of sale or purchase, for purposes of speculating upon the course of the market, was valid, said: "Generally, in this country all wagering contracts are held to be illegal and void as against public policy;" citing *Lewis* v. *U. S.*, 92 U. S. 513; *Mason* v. *Bogg*, 2 Mylne & C. 443; *Putnam* v. *Russell*, 17 Vt. 54; *West* v. *Bank*, 19 Vt. 403; *Moses* v. *Ranlet*, 2 N. H. 488; *Findlay* v. *Hosmer*, 2 Conn. 350; *Logan* v. *Anderson*, 18 B. Mon. 114; *Patten's Appeal*, 45 Pa. St. 151; *Graeff's Appeal*, 79 Pa. St. 146; *Bates* v. *Paddock*, (Ill.) 9 N. E. Rep. 257; *In re Bates*, 118 Ill. 524, 9 N. E. Rep. 257; *Jervis* v. *Smith*, 7 Abb. Pr. (N. S.) 217.

The consideration for the notes being illegal, the next question to determine is upon whom rests the burden of proof to show that the holder of the notes received them for value, before maturity, without notice of the illegality.   In *Bailey* v. *Bidwell*, 13 Mees. & W. 73, Baron PARKE said:

"It certainly has been, since the later cases, the universal understanding that if the notes were proved to have been obtained by fraud or affected by illegality, that afforded a presumption that the person who had been guilty of the illegality would dispose of it, and would place it in the hands of another person to sue upon it, and that such proof casts upon the plaintiff the burden of showing that he was a *bona fide* indorsee for value."

In *Graham* v. *Larimer*,  83 Cal. 177, 23 Pac. Rep. 286, the same doctrine is announced, as follows: "Section 1615 of the Civil Code provides that ' the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it.'   Conceding that this section applies to cases of illegal consideration, which is not quite clear, since the same Code distinguishes between a mere want of consideration and an illegal consideration, (sections 1607, 1608, and 1667,) yet, when the defendant has proved or the plaintiff has conceded that the consideration for a promissory note upon which the former is sued by an indorsee thereof is illegal, a *prima facie* case of notice to the indorsee of the illegality of the consideration is thereby made, which discharges the burden of proof on the part of the defendant, and casts it upon the plaintiff to prove that he took the note for value, and without notice of the illegality of the consideration.   Story, Prom. Notes, § 196; 1 Pars. Notes & B. 188, 189; *Fuller* v. *Hutchings*, 10 Cal. 526; *Sperry* v. *Spaulding*, 45 Cal. 548."   The principles announced in these authorities are applicable to the facts of this case.

The consideration of the notes being illegal, it was necessary for the defendant to show, by a preponderance of evidence, that the notes were assigned to an innocent purchaser for value, before maturity, without notice of the illegality of the consideration.   This the defendant has failed

to do. The evidence offered upon this point is found in the deposition of the witness Morris, and is as follows:

"*Question.* To whom did you indorse those notes? *Answer.* Thomas H. Cunningham. *Q.* Do you know where Cunningham is now? *A.* No, sir. *Q.* When did you last see him? *A.* I think about a year ago."

On cross-examination he said:

"*Question.* You say you indorsed those to Mr. T. H. Cunningham. *Answer.* I sold them to Cunningham. *Q.* When were they indorsed? *A.* They were indorsed before they become due. *Q.* What did you receive for them from him?"

At this point defendant's counsel objected to the question, and the witness refused to answer, on the ground that he was not obliged to give his private business away. The court ordered the witness to answer the question, and he then said:

"I got one thousand dollars from Mr. Cunningham for these notes. *Q.* Where did he pay you this amount? *A.* I have forgotten whether it was in the Lick House. He was then keeping a saloon,—the Lick House saloon,—him and Mr. Doyle. Cunningham and Doyle kept a saloon at the Lick House, and I am not positive where he paid me the money for these notes. *Q.* When did he pay you this? *A.* Well, he paid me some time after, and before these notes became due. *Q.* Where is Mr. Cunningham now? *A.* I do not know, sir. *Q.* How soon after these notes were signed by Mr. Goodwin did Mr. Cunningham pay you this one thousand dollars? *A.* Well I could not exactly tell the exact time; he paid me the day that I sold them to him. *Q.* Was it one week after that? *A.* I cannot exactly tell; it may be more, *Q.* How many notes did you sell to Mr. Cunningham? *A.* I sold two. *Q.* How many notes did Mr. Goodwin give you? *A.* Three. *Q.* He gave one note for fifteen hundred dollars,—one for fifteen hundred dollars,—and how much was the other one for? *A.* One thousand dollars. *Q.* Can you not state whether or not these notes were bought by Mr. Cunningham one week, two weeks, or a month, or two months after they were drawn? *A.* It must be more than a week or more than two weeks. * * * *Q.* Did he pay you in greenbacks, or in coin or check, or how. *A.* I could not be positive whether in greenbacks or gold coin; maybe some in greenbacks. It is so long ago that I have forgotten the exact kind of money that he gave me,—in gold notes, greenbacks, or what. * * * *Q.* Do you know whose handwriting it is upon these notes between the names of Edmond Morris and T. H. Cunningham? *A.* No, sir. *Q.* Look at the other one,—at both notes? *A.* I don't know. *Q.* Did you see that writing put upon those notes? *A.* I did not, sir."

This testimony speaks for itself. It is evasive, uncertain, improbable, and unsatisfactory. It is not sufficient to convince the mind of the court that the notes were transferred before maturity to an innocent purchaser for value. This opinion may be treated as a finding of the facts. The conclusion of the law necessarily follows therefrom that judgment should be entered in favor of the defendant for his costs.

It is so ordered.