FINDLAY and others, administrators of the estate of *John Curtis* deceased, *against* HOSMER :

IN ERROR.

A claim against the insolvent estate of a deceased person, collaterally secured by mortgage, may be allowed, unconditionally, by the commissioners, as a debt against the estate, on which the creditor will be entitled to an average ; which average, when received, a court of equity will apply to reduce the amount due on the mortgage, and, of course, to enhance the value of the equity of redemption.

THIS was an appeal from a decree of the court of probate for *East-Haddam* district, making distribution of the estate of *Curtis,* represented insolvent, to his creditors.

The purchase of the equity of redemption, in such case, by the mortgagee, will not extinguish his debt against the insolvent estate, so as to preclude him from an average.

A court of probate has no power to expunge from the report of commissioners a claim allowed by them ; the only mode of relief to the party aggrieved being by review, or an application to open the commission.

*Curtis,* with *Norton Watrous* and *Cornelius Shepherd,* had purchased a tract of land of *Stephen Hosmer,* the appellant ; and to secure payment of the purchase money, they gave him their joint promissory notes, and a mortgage of the land. *Hosmer* exhibited these notes to the commissioners on *Curtis'* estate, as a debt against that estate. They allowed the claim, and made their report accordingly. The whole amount of debts against the estate, found due and reported by the commissioners, was 15,771 dollars, 65 cents ; of which *Hosmer's* debt was 8,536 dollars, 13 cents. The effects of the deceased in the hands of the administrators, amounted to 1670 dollars, 79 cents. The judge of probate accepted the report of commissioners ; ordered certain last sickness debts, amounting to 15 dollars, 69 cents, to be paid in full ; and then decreed a distribution of the residue to and among the other creditors, in proportion to their respective debts, making an average of 17 cents on the dollar, but excluded *Hosmer's* name from the list of creditors, and thus deprived him of the average on his claim. *Watrous* and *Shepherd* were both living, but were unable to pay the notes ; and *Hosmer* had received no satisfaction of the debt, though he still held the mortgaged premises as security. After the report of the commissioners, and the acceptance of that report, the administrators, by order of the court of probate, sold the equity of redemption, subject to the mortgage, at public auction ; and *Hosmer,* through the medium of an agent, bid it off, for 172 dollars.

On these facts, the superior court set aside the order of distribution ; whereupon the administrators brought the present writ of error.

*Terry,* for the plaintiffs in error, contended, 1. That the commissioners on the estate of *Curtis* could not legally allow the notes as a debt against his estate, except upon the condition of his relinquishing his security by mortgage. Our law of distribution is founded on the broadest principles of equity. Its great object is, to place all the creditors, with the exception of a small class, upon the same footing. But it would defeat this object, if a creditor, who had obtained security for his debt, might come in and take his average share with the other creditors, and still retain his security for the balance. The rule under the *English* bankrupt law, which has the same equitable principle in view, is, that a cred-

itor shall not be allowed to prove his debt, unless he swears that he has no security, or offers to give up what he has. *Cull. B. L.* 145. 147. The late bankrupt law of the *United States* made no provision as to mortgages, and goods pledged ; yet the creditor was always required, upon the equity of the case, to give up his security, before he could receive a dividend.

2. That admitting that the commissioners did right in allowing the claim unconditionally ; yet *Hosmer's* purchase of the equity of redemption, after the return and acceptance of the report, gave him an absolute title to the land, and extinguished the debt for which it was pledged. The purchase of an equity of redemption, by the mortgagee, is tantamount to a foreclosure, *and more ;* for the subsequent payment of the money, though it would open a foreclosure, will not divest a purchaser of his title. When a mortgagor sells his equity of redemption to the mortgagee, he precludes himself, absolutely, from taking benefit of it afterwards. It appearing, then, to the judge of probate, that this debt was extinguished, it was no longer a proper subject of average, and it was correctly expunged from the list.

*T. S. Williams,* for the defendant in error, as to the first point, relied upon the undoubted principle of law, that a creditor may pursue all his remedies concurrently, until he obtains satisfaction. *Hosmer* was a creditor of the deceased : his debt was secured by the notes of the deceased, and a mortgage. It would be a strange anomaly, to require him to give up one security, in order to render the other available. It is not the object of the statute of distribution to take away vested rights. The argument, urged on the other side, from the *English* bankrupt law, is unfortunate : for the statute 21 *Jac.* 1. *c.* 19. *c.* 9. (2 *Cay's Stat.* 591.) expressly provides, that creditors having security shall, notwithstanding, receive only a rateable part of their just debts with the other creditors ; whereas our statute of distribution contains no such provision ; the fair and obvious inference from which is, that it ought to receive a different construction.

2. That the purchase of the equity of redemption, admitting it to stand on the same ground as though it had been made by *Hosmer* himself, without the intervention of a third person, did not satisfy or extinguish his debt. It clearly is

not an extinguishment, by the terms of the contract. Is it by mere operation of law ? No authority has been produced to shew that it is. Does any principle require it to be so considered ? The case is not stronger than that of a foreclosure ; but a foreclosure is never opened, except upon payment of all that is due. It is done in chancery on the idea of effecting complete justice. 1 *Eq. Ca. Abr.* 317. 1 *Bro. Ch.* 127. 1 *Ves. jr.* 434. 2 *Pow. Mort.* 1077, 8. In the present case, *Hosmer* cannot get more than his just debt : there is, therefore, no ground for chancery to interfere.

3. That if the administrators were dissatisfied with the report of the commissioners, they ought to have applied for a review, pursuant to the statute, *tit.* 61. *ch.* 2. ; that being the only mode in which the doings of the commissioners can be contested.

SWIFT, Ch. J. A mortgagee has a right to pursue all his remedies till he has obtained satisfaction of his debt ; but it will never be permitted that he should obtain more than his debt. The notes collaterally secured by the mortgage, were a proper claim against the estate ; and the commissioners were bound to allow them as a debt. When the estate of the deceased insolvent debtor is sold, the equity of redemption must be sold ; and in ascertaining the value, the amount of the mortgage money is to be considered, deducting from it the probable average that the insolvent estate will pay. If the land, then, should not be worth more than the money due on the mortgage, the equity is of no value, and the mortgagee may obtain less than his debt. If the land be worth more, then the purchaser will give a price accordingly. On a petition to redeem, I apprehend that a court of equity would consider the average, as a payment to apply on the mortgage ; but, at any rate, if the mortgagee should refuse to receive it, and the court should not think they could apply it to the mortgage debt, then the purchaser, by an application to a court of equity, could avail himself of the benefit of the average.

The mortgagee may as well purchase the equity of redemption as any other person ; and it may often be a convenient mode of extinguishing the right ; and though it is true, as a general proposition, that where the mortgagee purchases of

the mortgagor the equity of redemption, it will operate as a release of his debt ; yet this is because a presumption arises from the nature of the transaction, that such was the intention of the parties ; for, in such case, it will be supposed the mortgagee will give only the value of the land beyond the debt ; yet in the present case, the presumption is altogether different. The mortgagee, if he purchases, must consider the mortgage debt to be only what remains after a deduction of the average to which he becomes entitled by a judgment of the court of probate. He then bids upon a calculation that the original mortgage will be discharged ; but that he is entitled to the average allowed on his debt. There can, then, be no presumption, that he intended to waive or release his claim to it ; of course, such a purchase of the equity of redemption by the mortgagee will not vacate his claim to the average due from the insolvent estate.

Further, it may be remarked, that the court of probate has no power to expunge the claim of a creditor from the report of commissioners. A court of probate has no authority, in the case of insolvent estates, to admit or reject the claims of creditors, only in the course of an appeal. It would be strange, if a court of probate, in a summary manner, upon an *ex parte* hearing, could strike out the claim of a creditor. He has no power but to strike the average upon the debts found by the commissioners, according to the amount of the estate. If any creditor has been improperly allowed a debt, or his debt has been in any way satisfied, the commission must be opened, or some other proper mode adopted to correct the error.

I am of opinion that there is no error in the judgment complained of.

In this opinion the other Judges severally concurred.

Judgment affirmed.