# ELLIS L. SWEET *et al.*

*v.*

# WILLIAM REDHEAD.

1. MARSHALING ASSETS. The rule in equity of compelling a first resort to a particular one of two funds for a creditor's benefit who can reach but one of them, will not be enforced when it trenches upon the rights or operates to the prejudice of the party entitled to the double fund, or works injustice.

2. Where A and B executed a deed of trust on 80 acres of land to secure a note given by them, and afterwards, for the purpose of releasing 10 acres of the same, in use for a cemetery, B and his wife gave their trust deed on 17 acres owned by B to secure the payment of the same note, and it appeared that, at the time of the execution of the last named

deed of trust, A and B had given two other mortgages on the 80-acre tract, one to C for $1500, and the other to D, the then holder of the note secured by the first deed of trust, for $2500; that the mortgage to C had been foreclosed and sold to E; and after the execution of the several deeds of trust and mortgages, the complainant purchased the 17-acre tract, and who then filed his bill to compel D and the trustee to sell the 80-acre tract before the 17-acre tract: *Held*, that the complainant, having purchased after the giving of the two mortgages, had no higher equity than the holders under the mortgages, and that, as the sale of the 80-acre tract first might destroy the mortgage securities, it would be unjust and inequitable to so decree.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

· Messrs. SWEET & DAY, for the appellants.

Messrs. A. M. & H. W. AYERS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The case presented by the bill is this: On January 27, 1871, Samuel B. and Charles C. Troyford executed a trust deed to Albert C. Burnham on 80 acres of land in Champaign county, to secure the payment of a certain promissory note to Oswin Wells. The bill alleges that 10 acres of the tract were used for a cemetery, and for the purpose of so using the 10 acres, and for a further and collateral security of the same note given to Wells by Samuel B. and Charles C. Troyford, Charles Troyford and Mary Troyford, his wife, on the 27th day of April, 1872, executed their trust deed to Burnham on a tract of land of 17 acres in the same county; that Sandford Richards had become the owner of the note, and that Ellis L. Sweet had become successor in trust to Burnham, pursuant to a provision in the trust deeds, and there having been default in payment of the note, Sweet, upon the application of Richards, had advertised the two tracts of land for sale, for the purpose of payment of the note—the 17-acre tract, as to be sold on the 23d day of March, 1874, and the 80-acre tract, as to be sold on the 30th day of March, 1874.

The bill alleges that, subsequent to the execution of both the trust deeds, the complainant became the purchaser of the 17 acres, and it prays for an injunction of the sale as advertised, and that Sweet and Richards be compelled, first, to exhaust the 80-acre tract, before having recourse to the 17 acres, for the satisfaction of the note.

A preliminary injunction having been awarded, the court below overruled a motion to dissolve it, and, upon hearing on pleadings and proofs, made it perpetual. Sweet and Richards appealed.

The equity of the complainant is plain enough upon the face of the bill, under the application of the familiar rule, that, where there are two creditors of one debtor, the first having two funds to which he may resort for the satisfaction of his debt, and the second only being able to reach one of the funds, the first shall resort for satisfaction of his debt to that fund which he alone can reach. But it appeared in defense that, at the time of the execution of the trust deed of Charles and Mary Troyford for the 17 acres, there were two other mortgages given by Charles C. and Samuel Troyford on the 80 acres subsequent to the one first above named as given to Burnham, to-wit: one to R. A. Bower, to secure the payment of $1500, executed March 20, 1871, and recorded May 25, 1871, and one to Sandford Richards, to secure the payment of $2500, executed August 1, 1871, of the first one of which there had been a decree of foreclosure for $2072; and under the second one, in default of payment, there had been, in pursuance of a power of sale contained in the mortgage, a sale by Richards of the 80 acres to one Bailey, on the 19th of August, 1874, for the sum of $2878; that Redhead, the complainant, had knowledge of these mortgages at the time of his purchase of the 17 acres; that the deed of trust by Charles and Mary Troyford of the 17 acres was not as collateral to the one of Samuel B. and Charles C. Troyford, but that the former was given upon the release by Burnham and Richards of the 10 acres in the latter, and upon an express

arrangement with Samuel B. and Charles Troyford that the deed of trust of the 17 acres should be in lieu of, and take the place of the 10 acres released. There was no proof whatever of any of the allegations of the bill, except that the answers admitted the substantial allegations, except that the mortgage of Charles and Mary Troyford was collateral to that of Samuel B. and Charles C. Troyford.

Should the 80-acre tract, as required by the decree, be first resorted to and exhausted, and should the whole of it be absorbed in the satisfaction of the first mortgage debt, the effect would be an entire destruction of all rights under the second and third mortgages of the 80 acres, as the first mortgage is the first lien, and the sale thereunder would carry the whole title. This would be a plain injury to the subsequent mortgagees.

Now, this rule of compelling a first resort to a particular one of two funds for a creditor's benefit who can reach but one of them, will not be enforced whenever it will trench upon the rights, or operate to the prejudice of the party entitled to the double fund. 1 Story Eq. Ju. sec. 633.

As it was said by Mr. Justice Sergeant, in the case of *Zeigler* v. *Long*, 2 Watts, 206, in reference to this doctrine: "This principle must be employed, like all other rules of equity, to the attainment of justice. It is not to overthrow the equity of another person, and thus work injustice." And see *Barnum's Appeal*, 7 Watts & Serg. 269; 2 Lead. Cas. in Equity, 278, 281.

Should the 17-acre tract be first resorted to and exhausted, as Richards was proceeding to have done, according to the advertisement which was made of the sale, and should that tract be sufficient for the satisfaction of the first mortgage debt, that would be for the benefit of the second and third mortgages on the 80-acre tract; it would operate to make the second mortgage a first mortgage, and render it a security upon the whole interest in the land. The subsequent mortgagees of the 80 acres have the same equity to have the 17

acres first resorted to and exhausted in satisfaction of the first mortgage debt, in relief of their mortgages, that complainant, the purchaser of the 17 acres, has to have resort first made to the 80 acres, for the benefit of his purchase.

Complainant bought with knowledge of the subsequent mortgages, which had, before his purchase, been made on the 80 acres. The equities of the subsequent mortgagees and complainant would seem to be equal, except that those of the subsequent mortgagees are prior in time, and therefore better.

Nor do we see that complainant can be aided through his grantor's equity, that of Charles Troyford, to have the first mortgage debt of himself and Samuel B. Troyford first satisfied out of their joint land, the 80 acres, embraced in the first mortgage made by them jointly, before resorting to his (Charles Troyford's) separate land, the 17 acres, embraced in the mortgage made by himself and wife alone.

We may remark that there is nothing in the record to show whether Charles C. Troyford and Charles Troyford are different persons, or one and the same person; we assume them to be the same person.

As between Charles Troyford, or his grantee, the complainant, and Samuel B. Troyford, there would be an equity that, for the satisfaction of the joint mortgage debt of Samuel B. and Charles Troyford, their joint land mortgaged by them should first be resorted to and exhausted, before having recourse to the separate land of Charles Troyford by him separately mortgaged. But another equity here intervenes. After their first deed of trust of the 80 acres to Burnham, (the debt secured by which has come to be owned by Richards,) Samuel B. and Charles C. Troyford make a second mortgage of the same land to Richards, to secure another mortgage debt of theirs, and then, afterward, Charles Troyford makes his separate mortgage on 17 acres of land to secure the payment of the first mortgage debt of himself and Samuel B. Richards is, then, the holder of the three mortgages, and, in proceeding to enforce collection of his first mortgage debt, it is his

interest to have first applied the 17 acres separately mort-
gaged by Charles Troyford, as whatever is realized from that
source makes the better the security of his second mortgage
on the 80 acres.

If Charles Troyford, or his grantee, who stands in his
place, be allowed to compel the exhaustion first of the 80
acres, it will be to the lessening of, and may be to the entire
destruction of the security of the second mortgage given by
Charles and Samuel B. Troyford. It would be in defeat, or
to the injury of rights which Charles Troyford had himself
granted.

Richards has the three securities, which have been freely
given by Charles Troyford. If, by enforcing first the sepa-
rate mortgage on the 17 acres, Richards will thereby strengthen
the security of his second mortgage on the 80 acres, we think
he well may do so. It is for himself to choose, and not for
Charles Troyford or his grantee to dictate, which security he
shall first foreclose. Such is Richards' right by virtue of his
ownership of the mortgages.

Troyford's equity to have joint land applied to pay a joint
debt, before resort to his separate estate, is here countervailed
by Richards' conflicting equity to foreclose his securities in
such order of time as may best secure the collection of the
claims secured thereby.

Bailey, the purchaser of the 80 acres under foreclosure of
the second mortgage, is, of course, substituted in the place
of Richards, the mortgagee, and entitled to insist on all rights
that Richards might have done had such mortgage remained
unforeclosed; or Richards may do so for Bailey.

Additional support to the decision, if needed, might be
derived from the special fact which appears in evidence,
that, at the time of the giving of the mortgage on the 17
acres, 10 acres of land were released from the mortgage of
the 80 acres, and that it was the distinct understanding between
both the Troyfords, Burnham and Richards, that the mort-
gage of the 17 acres should be in lieu of, and take the place

of the ten acres.     But we feel it unnecessary to dwell upon that.

We are of opinion the court erred in overruling the motion to dissolve the injunction, and making the same perpetual, and the decree is reversed and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*