## In the matter of EUGENE H. BATES, Assignee.

*Filed at Ottawa November 13, 1886.*

1.  INSOLVENT DEBTORS—*assignment for the benefit of creditors—of creditors whose claims are otherwise secured.*  In case of an assignment for the benefit of creditors, the assignee will take the estate assigned, in trust for the benefit of all the creditors of the insolvent, notwithstanding some of them may have their debts secured by deed of trust, or otherwise; and such secured creditors are entitled to share, equally with unsecured creditors, in any and all dividends and distributions of the insolvent estate.

2.  Where a debtor assigns property incumbered by a mortgage or trust deed, the assignee will take subject to the lien of the mortgage or trust deed. All he will take is the equity of redemption.  He will have no control over the interest of the holder of the mortgage.

3.  A mortgagee may foreclose his mortgage, or bring his action at law on the mortgage debt, and make the same out of other property than that mortgaged; and when the mortgagor makes a general assignment for the benefit of all his creditors, the mortgagee may claim his dividend on his whole debt out of the general assets of the estate.  In such case, the amount of the dividend should be credited on the debt, and the mortgage foreclosed for the balance, only, and in case of a surplus, that will go to the assignee for the benefit of the other creditors.

4.  In the settlement of an insolvent estate, the proper course is to allow a creditor to prove his whole debt, without regard to any collateral security he may hold; and if the dividend so reduces the debt that the collateral security will more than pay it, the assignee is bound to redeem for the benefit of the other creditors.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Bureau county; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. ECKELS & KYLE, and Mr. H. T. GILBERT, for the appellant :

The general principle is, that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one, only, of the funds, for another debt, the latter has a right, in equity, to compel the former to resort to the other fund, in the first instance, for satisfaction. 1 Story's Eq. Jur. sec. 633; *Wire* v. *Shepherd,* 13 Ill. 41; *Hurd* v. *Eaton,* 28 id. 122; *Marshall* v. *Moore,* 36 id. 327; *Morrison* v. *Kurtz,* 15 id. 193; *Doyle* v. *Murphy,* 22 id. 502; *Sweet* v. *Redhead,* 76 id. 374; *Rogers* v. *Meyers,* 68 id. 92; *Hords* v. *Burton,* 79 id. 508.

The county court has full and complete jurisdiction over the trust fund in cases of voluntary assignments for the benefit of creditors, and over the assignee, and in the distribution of the fund. Rev. Stat. 1880, sec. 7, p. 146; *Freydendall* v. *Baldwin,* 103 Ill. 325.

Messrs. SKINNER & BROS., and Messrs. KENDALL & LOVEJOY, for the appellee :

The rule in respect to the marshaling of assets has no application as between debtor and creditor. *Rogers* v. *Meyers,* 68 Ill. 92; *Plain* v. *Roth,* 107 id. 588.

The assignee takes subject to all liens. (*O'Hara* v. *Jones,* 46 Ill. 288; *Eames* v. *Mayo,* 6 Bradw. 334.) He takes as a volunteer, and hence has no greater right than the assignor had. *Hardin* v. *Osborne,* 94 Ill. 571; *Jenkins* v. *Pierce,* 98 id. 646; *Yrotman* v. *Savings Inst.* 95 U. S. 764; *Stewart* v. *Platt,* 101 id. 731.

The rule in equity, that when one party has a lien on two funds, and another has a lien on one of them, only, the latter

may require the former to resort to the other fund in the first instance, has two exceptions: that it shall not operate to the prejudice of the former, and that it works no injustice to the debtor. *Brown* v. *Cozard,* 68 Ill. 178; *Morrison* v. *Kurtz,* 15 id. 193; *Sweet* v. *Redhead,* 76 id. 374; 1 Story's Eq. Jur. secs. 558, 559, 560, 633; *Brinkerhoff* v. *Marvin,* 5 Johns. Ch. 320; *Woolcocks* v. *Hart,* 1 Paige, 185.

A party may hold a mortgage security and still be entitled to take a dividend on the full amount of his debt out of the assets of an insolvent estate, irrespective of the security held for its payment. *Findlay* v. *Hosmer,* 2 Conn. 330; *West* v. *Bank of Rutland,* 19 Vt. 403; *Morris* v. *Ohoine,* 22 Pa. St. 441; *Graeff's Appeal,* 79 id. 146.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On July 2, 1883, Sower Bros. made a trust deed to George S. Skinner, upon their mill property in Princeton, Bureau county, to secure their notes to the appellee, Annie G. Paddock; on April 26, 1884, they made an assignment, for the benefit of their creditors, to appellant, Eugene C. Bates, and, in the list of creditors, attached thereto, named appellee, as having a claim for $1000; on May 15, 1884, the assignee gave notice to all creditors to present their claims within three months; on August 14, 1884, appellee presented to the assignee and proved her claim for $1017, being the amount due upon the notes, so held by her; on August 18, 1884, the assignee reported and filed with the clerk of the county court, a list of the creditors, who had proved their claims, including therein appellee's claim, and stating therein, that said claim was secured by the trust deed, above named; no person, interested as creditor or otherwise, filed any exceptions to her claim within thirty days, or at any time; on December 30, 1884, the assignee filed, in the office of the county clerk, his report, showing, that the total amount of all claims filed, including

that of appellee, was $14,423.58, and that the total amount in his hands, subject to distribution, was $5162.65, that appellee's claim then amounted to $1043.33, and that the property, described in the trust deed, securing it, was worth only $765.75, and therein praying for an order of distribution of thirty per cent among the creditors, except appellee, and, as to her claim, for an order to pay her thirty per cent on the excess of her claim over and above $765.75, and to hold in his hands thirty per cent on said $765.75, until her rights in the mortgaged property should be determined and realized upon, or until the further order of the court; the assignee's report, dated December 30, 1884, was approved by the county judge on January 27, 1885, and a dividend ordered in accordance with the prayer thereof; appellee took an appeal to the circuit court of Bureau county, and, upon a hearing of the cause on September 29, 1885, the circuit court rendered a decree, approving said report of the assignee, affirming the order of the county court, made thereon, and directing a distribution to be made in the same manner, as directed by the county court; at the hearing, appellee offered to surrender or assign her claim and trust deed to the assignee, or other creditors, on payment of her claim in full, or to release her claim and trust deed upon payment of her claim in full by the assignee or creditors, but such offer was refused; at the hearing, also, appellee entered her motion for a dividend of thirty per cent upon the full amount of her claim, as proven and reported, which motion was overruled by the circuit court; appellee prosecuted her appeal from the circuit to the Appellate Court; the Appellate Court reversed the decree of the circuit court, remanded the cause with directions, that an order of distribution be entered, giving the appellee here, who was the appellant there, a dividend upon the full amount of her claim, and adjudged, that she should recover of the assignee, Bates, who was appellee there, and appellant here, her costs; the Appellate Court has allowed the assignee an appeal to this

court, upon a certificate, that the case involves questions of law of such importance, on account of the principal and collateral interests, as that it should be passed upon by the Supreme Court.

The question, presented for our consideration, is, whether the assignee should have paid appellee a dividend upon the whole amount of her claim, as proved and reported, or a dividend only upon the excess of her claim over and above the value of the security, which she held. We think, that the Appellate Court decided correctly, and that the dividend should have been upon the whole amount of the claim.

The interest of the assignors in the property, covered by the trust deed, passed to the assignee, subject to the lien of the trust deed. All, that the assignee took by the deed of assignment, was the equity of redemption. The trust deed was owned by the *cestui que trust*, therein named, and could not be subjected to the control or disposition of the assignee.

The 13th section of the "Act concerning voluntary assignments," etc., (Starr & Curtis' Stat. p. 1307,) provides, that "every provision in any assignment, hereafter made in this State, providing for the payment of one debt and liability in preference to another, shall be void." The payment, here referred to, is a payment to be made out of the assets, passed by the assignment to the assignee, or obtained by him, by virtue of his position, as assignee. If the letter of the law forbids any provision to be made, in the instrument of assignment, for preferential payments out of the assigned assets, the spirit of the law would forbid any such preferential payments in the mode of distributing such assets. To pay all the creditors, except one, dividends upon the full amounts of their respective claims, and, at the same time, to pay that one creditor a dividend upon a portion only of his claim, is to give a preference over one creditor to all the rest of the creditors.

The 13th section, above named, also provides, that "all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." Appellee's debt, as proved and reported, without objection or exception, was $1043.33. Her debt was not $277.58, the excess of $1043.33 over $765.75, the estimated value of her security. Her whole debt was provided for in the assignment, because the whole of it was mentioned by the assignor himself, as one of his debts, in the attached list of liabilities. It was, therefore, the whole debt and not a part of it, which was to be "paid *pro rata* from the assets." It is true, that appellee held a trust deed, securing her debt, but such trust deed had never been foreclosed, and no part of the debt had been paid out of the security. Before the assignment, appellee could have filed a bill to forclose her trust deed, or, if she preferred, she could have sued at law on the notes and enforced "payment from other means than the mortgaged property." (*Rogers* v. *Meyers et al.* 68 Ill. 92.) She could have obtained judgment and levied on personal property, though holding a mortgage on real estate. So, after the assignment, she could claim her dividend on her whole debt out of the general assets of the estate, though possessed of a special security. Of course, she could have but one satisfaction. The amount of the dividend must be credited on the debt, and the mortgage foreclosed for the balance, and, in the event of a surplus, that surplus would go to the assignee for the benefit of the other creditors.

Counsel for appellant claims, that the Assignment act provides for winding up the trust within a limited time, and that such trust might be indefinitely prolonged, if its settlement should await the realization of a surplus, after foreclosure. By the decree of the circuit court, the assignee was to take from the assets thirty per cent of $1043.33, to-wit, $312.99, and, of this, pay thirty per cent on $277.58, to-wit, $83.27

to appellee, but the balance, to-wit, $229.72, that is, thirty per cent of $765.75, was to be held by him, until the trust deed should be realized upon by foreclosure. The disposition of the $229.72, so left in the hands of the assignee, would be delayed fully as long as the ascertainment of the surplus could be postponed.

When property pledged is unequal in value to the debt, to hold, that it is payment to the extent of its value, would occasion insuperable inconveniences. Who is empowered to fix the value? How can a mortgage estate be rendered absolute in the mortgagee, unless he chooses to foreclose, by suit, for condition broken? How can the mortgagee be compelled to make a conveyance of his estate to third persons, at an appraised value, unless his whole debt is paid?

We are aware, that there is conflict in the authorities upon this subject. The doctrine, that a creditor, under a general assignment, who has a special security, can only claim a dividend upon the amount remaining unpaid, after exhausting the property, upon which he has such special lien, is supported by decisions in Iowa, New York and Rhode Island, among which are the following cases: *Wurtz et al.* v. *Hart et al.* 13 Iowa, 515; *Besley* v. *Lawrence*, 11 Paige, 581; *Knowles, Petitioner*, 13 R. I. 90. These cases found their conclusions mainly upon the well known equitable rule, that, when one creditor has a lien upon two funds, and another a lien upon only one of them, the former will be compelled to resort, for satisfaction, in the first instance, to the fund, upon which he has an exclusive lien. They seem, however, to overlook the important qualification, that the rule in question will not be enforced, whenever it will trench upon the rights, or operate to the prejudice of the party, entitled to the double fund. (*Sweet et al.* v. *Redhead*, 76 Ill. 374; *Brown* v. *Cozard*, 68 id. 178; *United States* v. *Duncan*, 12 id. 523.) In its application, the paramount incumbrancer must not be "delayed or inconvenienced in the collection of his debt, for-

it would be unreasonable, that he should suffer, because some one else has taken imperfect security." 3 Pomeroy's Equity, sec. 1414.

It is easy to see, that, if this rule is enforced in the case at bar, it will work to the prejudice of appellee. She can not realize her whole debt by foreclosing the trust deed. It is admitted, that the property, covered by the trust deed, is worth less than her whole debt by the sum of $277.58. If she should first foreclose and realize $765.75, the value placed upon her security, she would then receive, in addition thereto, under the ruling of the circuit court, only $83.27, the thirty per cent of $277.58, making her total receipts $849.02, and leaving $194.31 of her debt unpaid. But if she should be paid thirty per cent of her whole claim, to-wit, $312.99, in the first place, and the $765.75 should be realized by fore-closure hereafter, she will have been paid in full, and a small surplus left over for the creditors. If the $229.72, held by the assignee, should eventually all be paid to her, the order of the circuit court delays and inconveniences her in the col-lection of her debt, as she is compelled to wait for her divi-dend, until a foreclosure shall be effected, while the other creditors receive their dividends at once.

The weight of authority is with the position here taken, that appellee is entitled to a dividend upon the full amount of her claim, before exhausting her security. Story, in 1 Equity Jurisprudence, sec. 564 b., says: "The general rule, in the settlement of insolvent estates, is, to allow the creditor to prove his whole debt, without regard to any collateral security he may hold. If the dividend so reduces the debt, that the collateral security will more than pay it, the personal repre-sentative is bound to redeem for the benefit of the general creditors."

Jones on Pledges, sec. 587, says: "The pledgee may prove his whole claim against the pledgor's estate in insolvency without deducting the value of his security. This is the rule

more generally adopted in the absence of a statutory require-
ment. If the dividend so reduces the debt, that the collateral
security will more than pay it, the security must be redeemed
for the benefit of the general creditors. This rule gives effect
to the equitable principle, that a creditor's diligence shall be
rewarded by giving him his full legal rights."

In *Morris* v. *Olwine*, 22 Pa. St. 441, which was a case of
distribution under an assignment for the benefit of creditors,
a creditor by bond and mortgage was held entitled to a *pro
rata* dividend on his whole claim, even though he had col-
lected the greater part of it out of the mortgaged property,
the amount collected and the dividend together not being
sufficient to satisfy the debt. He was not restricted to a
dividend on his claim, as reduced by the proceeds of the
mortgage. To the same effect are *Miller's Appeal*, 35 Pa. St.
481, and *Graeff's Appeal*, 79 id. 146, both of which were
cases of distribution under assignments for the benefit of
creditors. The Pennsylvania decisions hold, that a creditor
is entitled to a dividend under an assignment, not merely as
a creditor, but as an equitable owner of the assigned estate,
and that the extent of his ownership is fixed by the amount
of his claim, when the assignment is made.

The doctrine, here contended for, is further sustained by
the following cases: *Jervis* v. *Smith*, 1 Sheldon, (N. Y.) 189;
*Mason* v. *Bogg*, 2 My. & Cr. 443, 446; *Putnam* v. *Russell*,
17 Vt. 54; *West* v. *Bank of Rutland*, 19 id. 403; *Walker* v.
*Barker*, 26 id. 710; *Moses* v. *Ranlet*, 2 N. H. 488; *Findlay* v.
*Hosmer*, 2 Conn. 350; *Logan* v. *Anderson*, 18 B. Mon. 114;
*Schunk's Appeal*, 2 Barr, 304; *Duncan* v. *Fish*, 1 Aiken, 231;
*Evertson* v. *Booth*, 19 Johns. 486; *Van Mater* v. *Ely*, 13 N. J.
Eq. 271.

The rule, laid down in these cases, is in harmony with the
spirit of our own decisions. In *Morrison* v. *Kurtz et al.* 15
Ill. 193, Morrison held notes, signed by the three partners in

a firm, composed of Kurtz, Davis and Loyd, which notes were secured by a trust deed upon the separate estate of Loyd. After dissolution of the partnership by the death of Davis and Loyd, in an equity proceeding begun by Kurtz, as surviving partner, certain mill property, owned by the firm, was sold, under the decree of the court, to raise money to pay the debts. Morrison was a general creditor of the firm, claiming his share of the proceeds of sale, and, at the same time, held special security against the land of one member of the firm. This court there said: "The only objection to Morrison's sharing in the distribution is, that the estate is insolvent, and that his debt is secured by a deed of trust of Loyd's private estate, to which he can resort for the payment of his debt, and to which the other creditors of the firm can not resort for the payment of their debts. * * * We think, that he has a right to insist upon his distributive share of the cash, raised from the sale of the property, as a creditor of the firm. As a creditor of the firm, he has the same abstract right to the proceeds of the sale, as the other creditors. He is as meritorious in every respect as they; and, because he was more vigilant and cautious in requiring security, it is no reason, why he should be put in a worse condition than the other creditors, by having his debt postponed and his payment delayed, till, by a proper proceeding, he can realize out of the property, upon which his debt is secured, while the other creditors are paid in cash." *Brown* v. *Cozard, supra; Sweet* v. *Redhead, supra.*

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*