# Benjamin S. Levy et al. v. The Chicago National Bank.

# Benjamin S. Levy et al. v. Metropolitan National Bank of Chicago.

1.  VOLUNTARY ASSIGNMENTS—*What Estate Passes.*—The estate which passes under the assignment law to the assignee of an insolvent is merely the estate which the assignor, at the time of the making of the assignment, had in the property.

2.  SAME—*What the Assignee Takes.*—The assigned property remains in the hands of the assignee, subject to all liens thereon, and with no right of possession, administration or control by the assignee, excepting such as the assignor had.

3.  SAME—*Creation of a Special Fund.*—By the making of an assignment an assignor creates a special fund, or estate, for the payment of debts, which, at the date of the assignment, he was owing. The assignee becomes the trustee of such estate, and all parties, creditors when such assignment was made, are the *cestuis que trust.*

4.  SAME—*Nature of the Assigned Estate.*—The assignee takes only what the assignor had when the assignment came into being, and this, and this alone, is the estate upon which he administers, and against that only are claims proven and allowed.

5.  SAME—*Allowance of Claims—Secured Creditors.*—When the claim of a secured creditor is allowed, it is allowed for the amount owing at the making of the assignment, without reference to the security.

6.  SAME—*Secured Claims—Collaterals.*—Whatever has been received by a creditor from the security between the filing of the claim, has been obtained from that which has never been a part of the assigned estate.

7.  SAME—*A Creditor Can Have but one Satisfaction.*—A creditor can have but one satisfaction, a rule which applies to the entire law of pledges as well as to the right to resort to different funds.

**Memorandum.**—Proceedings under the voluntary assignment act. Appeal from the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding. Heard in this court at the October term, 1894, and affirmed. Opinion filed December 20, 1894.

## STATEMENT OF THE CASE.

Herman Schaffner & Company, by A. G. Becker, the surviving partner, made an assignment June 3, 1893. Their indebtedness exceeded at that time $2,000,000. Their assets were such, that up to the present time, a ten per cent divi-

dend had been declared, and the prospects for more than five per cent additional dividend are exceedingly slight.

At the date of the assignment the insolvents were indebted to the Chicago National Bank in the sum of $100,000. The bank held as collateral security to this indebtedness, certain promissory notes of the customers of Herman Schaffner & Co., owned by the insolvents and pledged by them to the bank in accordance with the contract embodied in the collateral notes.

These collateral notes had peen partially paid. Prior to September 9, 1893, the day on which the Chicago National filed its claim against the estate of Herman Schaffner & Co., it had collected upon these collaterals $66,012.88; on September 9th, but whether before or after the filing of its claim does not appear, it collected $5,000; and before the time of the assignment and the hearing of this cause in the County Court it had collected in all $90,008.38.

The court allowed the bank to participate in the dividends on the basis of its claim as it stood on the day of assignment. Appellants, creditors of the estate, who had filed objections in due time, insisted that the claim should be allowed only for the balance due at the date of the hearing, after deducting all sums collected on the collateral prior thereto. Which of these contentions states the true rule, or whether the date of filing the claim with the assignee shall control, is the issue, and the only issue, raised by this appeal.

The facts in the case of the claim of the Metropolitan National Bank are so similar to those above set forth, that a statement of them is unnecessary.

HOFHEIMER, ZEISLER & MACK, attorneys for appellants.

APPELLEES' BRIEF, HOYNE, FOLLANSBEE & O'CONNOR, ATTORNEYS.

The great weight of authority in England and in this country is strongly opposed to the view that a creditor with collateral shall be thereby deprived of the right to prove his full claim against an insolvent estate. Greenwood v. Tay-

lor was questioned by Lord Cottenham in Mason v. Bogg, 2 Mylne & C. 443, 448, and was expressly repudiated as authority in the court of chancery appeals in Kellock's case, 3 Ch. App. 769, a case which, upon this point, is cited with approval in Lewis v. U. S., 92 U. S. 618. In this country, the Massachusetts doctrine was dissented from by the Supreme Court of New Hampshire in the early case of Moses · v. Ramlet, 2 N. H. 488. Other cases which fully support the views we have expressed are: People v. E. Remington & Sons, 121 N. Y. 336; 24 N. E. Rep. 793; In re Bates, 118 Ill. 524; 9 N. E. Rep. 258; Findlay v. Hosmer, 2 Conn. 350; Logan v. Anderson, 18 B. Mon. (Ky.) 114; Bank v. Patterson, 78 Ky. 291; Brown v. Bank, 79 N. C. 244; Kellogg v. Miller, 22 Or. 406; 30 Pac. Rep. 229; Miller's Estate, 82 Pa. St. 113; Graeff's Appeal, 79 Pa. St. 146; Patten's Appeal, 45 Pa. St. 151; Miller's Appeal, 35 Pa. St. 481; Allen v. Danielson, 15 R. I. 480; 8 Atl. Rep. 705; Bank v. Haug, 82 Mich. 607; 47 N. W. Rep. 33; West v. Bank, 19 Vt. 403. Compare, also, Kortlander v. Elston, 2 C. C. A. 657; 52 Fed. Rep. 180; Bank Cases, 92 Tenn. 437; 21 S. W. Rep. 1070.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

These appeals, involving as they do the same question of law, one opinion applicable to each, is written.

A proper decision of these cases requires a consideration of what the estate is which the assignee of an insolvent receives and administers upon, as well as the nature of the claim made by a creditor and the effect of an allowance thereof.

The estate which passes under our assignment law to the assignee of an insolvent is merely the estate which the assignor, at the time of the making of such assignment, had. The assigned property remains subject to all liens thereon, and with no right of possession, administration or control by the assignee, save such as the assignor had.

If a stock of goods of the value of $50,000, upon which

there is a subsisting, valid chattel mortgage for $25,000, be assigned, the estate of the assignee in this is merely that which is left after the satisfaction of the mortgage; it is not $50,000 worth of goods that he has received, but rather a right to have the residue remaining out of such stock when the first claim of $25,000 thereon shall have been satisfied.

So too, if among the assigned effects there be $100,000 of good commercial paper pledged to and in the possession of a creditor to secure him for an indebtedness of $50,000, the estate of the assignee therein is merely that which will be left when the pledge has been paid; until then the assignee has neither right to the custody of such paper, nor to handle any funds received thereon, and the estate in such paper in which unsecured creditors have an interest and a right to look, is that alone which is left after the $50,000 claim thereon has been discharged.

By the making of an assignment an assignor creates—sets apart—a special fund or estate for the payment of debts he, at the date of such assignment, is owing. The assignee becomes the trustee of such estate, and all parties creditors when such assignment was made are *cestuis que trust.*

So far as the assignee, the trustee, is concerned, he takes only what the assignor had when the assignment came into being; that and that alone is the estate upon which he administers, and against that only are claims proven and allowed in the County Court.

If the day after the assignment is recorded, the assignor comes by inheritance into a large property, such property does not pass to his assignee—is not a part of the fund to which the *cestuis que trust* of the insolvency proceeding have in it a right to look. If creditors wish to reach such newly acquired estate, they must resort to other methods and other proceedings.

Thus it is that when a claim is filed or allowed against an insolvent estate, it is only against the estate; the allowance is only for a payment out of that estate.

The analogy sought to be drawn between the case of a

judgment in an action of assumpsit and that of the allowance of a claim against an insolvent fails because the judgment in assumpsit is personal—not against or to be paid out of any particular estate; but being personal and general, resort may be had to any property subject to execution which the debtor then has or may thereafter acquire. Such judgment becomes a claim limited to a particular estate, only, when the debtor dies.

The views here expressed are in part set forth in Furness et al., Admrs., v. Union National Bank, 46 Ill. App. 522; while that was a case of a claim made against the estate of a decedent, the principle there involved is applicable here.

When, then, an assignment is made, what is the position occupied by creditors of the assignor, and what is the effect of the filing and of the allowance of their claims?

An assignment is for the equal benefit of all creditors; there are in it no preferences. The partially and the fully secured, as well as those having no security, are creditors to the full extent of their respective claims. By virtue of the assignment, there is set apart a fund for the equal benefit, ratably, of all creditors. The creditor for $100,000 having security to the extent of $50,000, has now a claim upon the estate to the extent of his entire debt, and the creditor for $100,000, who has no security, has a claim upon the estate for the same amount.

The fund set apart by the assignment for the payment of these two does not change; it may be diminished by expenses paid, and in other ways, but it remains to the end one fund, set apart for creditors. When creditors file their claims, the filing is against the estate, the fund assigned for their payment.

The secured creditor, who, between the assignment and the filing of his claim has realized something upon his security, files his claim for the sum owing to him when the assignment came into being, not only because to pay that sum was the assignment made, but because in obtaining part payment from his pledge he has taken nothing, realized upon nothing, belonging to the insolvent estate. That which at the time of the assignment he held as security was not, could not be,

assigned over; only such as might be left after payment of the debt for which the security was given, had the assignor dominion or power to transfer by assignment.

So, too, when the claim of the secured creditor is allowed, it is allowed for the sum owing at the making of the assignment. Whatever has been received from the security, between the filing of the claim and the allowance, has been obtained from that which has never been a part of the assigned estate; as much so as if it had been received from a third party who had guaranteed the payment of the assignor's debt.

The rule that all creditors are entitled to have their respective claims allowed for the amount owing at the making of the assignment, is not only consonant to principle and reason, but is a rule that leads to no absurdities or stultifications.

If, as contended, the secured creditor is to have allowed only the amount unpaid at the time of the hearing, we have this condition:

To creditor A is owing $100,000; he has as security therefor perfectly good notes to the amount of $50,000, maturing in one year. He files his claim, the hearing comes on before any of his collateral has matured or been paid, and his claim is therefore allowed for $100,000. To creditor B is owing $100,000; he also has as security perfectly good notes to the amount of $50,000, maturing in one month. He files his claims and the hearing comes on after he has realized $50,000 upon his collateral; his claim is therefore, it is urged, to be allowed for only $50,000.

The interest of the assignee must then be in all cases of claims by secured creditors to delay the hearing until the security has been fully exhausted.

If the secured creditor is only to be allowed what was owing at the date of the filing of the claim, his interest is then to file as soon as possible, and the claimant who, by reason of his proximity to the residence of the assignor or otherwise, learns of it immediately, has an advantage over him who, dwelling afar off, receives the intelligence after weeks have elapsed.

The views here expressed are enunciative of a simple rule easily understood and acted upon, and such as involves neither assignees nor courts in inconsistencies, and are, as we believe, sustained by the great mass of authorities. In re Bates, 118 Ill. 524; Furness v. Union Natl. Bank, 46 Ill. App. 522; Affirmed, 147 Ill. 570; People v. Pennington, 54 Hun 505; Affirmed, 121 N. Y. 328; Chemical National Bank v. Armstrong, 59 Fed. Rep. 372–378, and cases there cited; 3 Pomeroy's Eq. Juris, Sec. 1414; Story's Eq. Juris, Sec. 5646.

Of course, in all that has been said it is understood that a creditor can have but one satisfaction, a rule which applies to the entire law of pledges as well as to the right to resort to different funds.

Motions to dismiss these appeals have been made, which motions are predicated upon the case of Stivers v. The People, 38 N. E. Rep. 564, in which, as we regard it, the opinion is in effect expressed that in insolvency proceedings, appeals do not lie from the County Court to this court, but to the Circuit Court. The appeal under consideration in that case was from a judgment rendered in a prosecution for bastardy; the opinion does not mention the case of Union Trust Co. v. Trumbull, 137 Ill. 146, in which, upon an appeal from a judgment rendered by the County Court, an insolvency proceeding, it was held that such appeal was properly taken to this court, and that in such case an appeal did not lie from the County Court to the Circuit Court; nor does the opinion allude to the case of Heinzelman Bros. et al. v. Schrader, Assignee, 150 Ill. 227, in which the ruling in the case of Union Trust Co. v. Trumbull, *supra*, was re-affirmed. We therefore feel that in the present causes we are warranted in taking jurisdiction of these appeals, and we do this with less hesitation because our judgment being of affirmance, it not disturbing the order of the County Court, the final order entered here will work no harm if it should be hereafter held that appeals from judgments of the County Court rendered in insolvency proceedings, lie only to the Circuit Court.

The respective orders of the County Court are affirmed.