# CHARLESTON.

WILLIAMS *et al. v.* OYERHOLT *et al.*

Submitted January 26, 1899—Decided April 8, 1899.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Secured Creditors—Surrender of Collateral.*

   Creditors secured by a general assignment of their debtor's estate are entitled to present participation in the general funds. arising from such assignment, although they may hold collateral securities on their debts. They cannot be required to surrender such securities until their debts are fully satisfied. Nor can they be refused participation in the general fund until such securities are exhausted. (p. 343.)

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Secured Creditors—Surrender of Collateral—Equity.*

   The trustees, debtor, or other creditors interested have the right to redeem such collateral securities by the payment of the secured debts in full; and a court of equity, having jurisdiction of the debtor's estate for distribution, may compel the surrender of such collaterals, or any balance thereof remaining after full satisfaction of the secured debts. (p. 344.)

Appeal from Circuit Court, Greenbrier County.

Action by L. J. Williams and J. C. Patterson against W. H. Overholt and others. Judgment for plaintiffs, and John W. Harris and other defendants appeal.

*Modified and affirmed.*

J. W. HARRIS, R. W. HILL, and E. L. BEARD, for appellants.

L. J. WILLIAMS, for appellees.

DENT, PRESIDENT:

"The petition of John W. Harris, attorney, E. L. Beard, and R. W. Hill respectfully represents that they are aggrieved by a decree of the circuit court of Greenbrier County rendered on the 24th day of June, 1897, in a chancery cause therein pending, in which L. J. Williams and J. C. Patterson, trustees, are plaintiffs, and W. H.

Overholt and others are defendants. It will be seen from inspection of the record that three notes of said W. H. Overholt, for the sums of $1,500, $2,000, and $375, respectively, had been protested for nonpayment, and that your petitioners, E. L. Beard and R. W. Hill, the endorsers thereof, had been compelled to take up the same, and, that, an account having been ordered of the debts of Overholt, Overholt secured by a certain deed of trust in the bill mentioned, these notes were filed in the name of John W. Harris, attorney, and the same were allowed and reported as secured by the trust deed aforesaid. Overholt, however, stated, in a deposition given by him, that he had assigned certain paper as collateral security for the payment of these debts, but did not state the character of this paper, what had been or could be realized thereon, or whether it was of any value. The only information furnished as to this collateral is contained in the deposition of John W. Harris, from which it appears that such of it of which he had any knowledge was given on the two first-mentioned notes, and that some of it would not become due for a long time. The larger part of it seems to have been turned over to Hill, and to have consisted of small accounts, and that very little of any of the collateral turned over had been collected. The contention of petitioners is that the deed of trust aforesaid secured all of Overholt's general creditors equally, and without regard to the collateral held by them. It was made to secure 'the payment of their debts' and the debts thus secured were, of course, the full amount owing by Overholt at the time the deed of trust was given, which was subsequent to the making of the notes in question. Your petitioners therefore should have been permitted to participate to the full amount of said notes in such portion of the trust fund as remained after the payment of prior liens. They could not be deprived of this because they held collateral which was not within control of the debtor. A secured creditor is entitled to a dividend on the full amount of his claim. See *People* v. *E. Remington & Sons*, 121 N. Y. 328, (24 N. E. 793); *Bank* v. *Armstrong*, 8 C. C. A. 155, (59 Fed. 372); *Miller's Appeal*, 35 Pa. St. 481; *Allen* v. *Danielson*, 15 R. I. 481, (8 Ttl. 705); *Patten's Appeal*, 45 Pa. St. 151; *In re*

*Bates,* 118 Ill. 524, 9 N. E. 257; *Findlay* v. *Hosmer,* 2 Conn.
350; *Logau* v. *Anderson,* 18 B. Mon. 114; *Brown* v. *Bank,*
79 N. C. 244; *Kellog* v. *Allen,* 22 Or. 406, (30 Pac. 229);
*Bank* v. *Haug;* 82 Mich. 607, (47 N. W. 33); *Bank* v. *Ken-
drick,* 92 Tenn. 437, (21 S. W. 1070); *Klortlander* v. *Elston,*
2 C. C. A. 657, (52 Fed. 180); *West* v. *Bank,* 19 Vt. 403."

This is an abstract from the petition for appeal, show-
ing the matter of controversy. The circuit court's decree
in relation thereto is as follows: "It appearing to the
court from said report that the following creditors of W.
H. Overholt received from him certain securities as col-
lateral to secure the payment of their debts before the
general assignmnt made on the 3d day of July, 1896, the
court is of opinion that said creditors are not entitled to
participate in the distribution of the proceeds now in the
hands of said trustees until said collateral securities have
been collected, and applied *pro tanto* to the payment of
their respective debts, or until said securities have been
ascertained to be worthless; and, in estimating the amount
which said creditors thus protected are entitled to receive
out of the general fund, the calculation shall be made upon
the basis of what remains due them and unpaid after ap-
plying their said collaterals. But it not appearing at this
time what is the value of said collaterals, and many of
them not yet being due and payable by the parties against
whom they are held, therefore, in order that their rights
may be fully protected, said trustees are directed to make
the calculation for distribution upon the hypothesis that
none of said collateral can be realized upon, and to retain
for said creditors the amount thus ascertained to belong to
them ,to be paid by them when their said collateral securi-
ties shall have been ascertained to be worthless; and in
the event said collateral shall be realized upon, and then
holders thereof shall not be entitled to the whole of said
amount thus retained, and after applying the amounts so
realized, *pro tanta* to the payment of the debt of the holder
of such collateral, the funds shall be again prorated upon
the basis of the balance, if any, thus found to be due them,
and, in the event the amount thus realized upon said col-
lateral is sufficient to pay the debt of the holder thereof
in full, then such creditor shall not receive anything from
the trust fund, and, if the amount realized upon said col-

lateral is more than sufficient to pay in full the debt of the holder thereof, then such creditor shall turn such excess into the trust fund, and the same shall be applied as here·inbefore indicated. It appears from said reports that the following creditors hold collateral securities, and who are referred to above, viz.: J. M. Shirkey, Johnson, Omohundro & Co., J. W. Harris, attorney, as to debts Nos. 43, 44, and 45, above enumerated, Daniel, Miller & Co., Ott Bros. &. Co. and D. A. Peck. It is therefore adjudged, ordered, and decreed that said creditors collect, and apply to the payment of their respective debts, *pro tanto*, the collateral securities which they now hold, and that when said· collateral securities have been thus collected and applied, or ascertained to be of no value, then the said trustees are directed to pay over to said creditors their *pro rata* share of the general fund applicable to their debts, which amount to be paid them shall be ascertained by a calculation upon the basis of what remains due them after applying their collateral realized upon, and not upon the whole amount of their debt. And the *pro rata* share to which these creditors would be entitled in the event that their collateral is worthless, and which is directed to be retained as aforesaid, shall be loaned out by the commissioners or trustees, to whose hands the same has or may come, until the further order of this court; the borrower to execute bond, with good personal security, to be approved by said commissioner or trustees."

The law governing the question involved is well stated in the opinion of Gray, J., in the case of *People* v. *E. Remington & Sons*, 121 N. Y. 336, (24 N. E. 795), as fol·lows: "In this country we find that rule more generally prevailing which allows the creditor holding securities to prove and receive his dividend on the whole debt. It is asserted in Judge Story's work on Equity Jurisprudence (section 524), and in the follow'ng cases: *In re Bates*, 118 Ill. 524, (9 N. E. 257); *West* v. *Bank*, 19 Vt. 403; *Moses* v. *Ranlet*, 2 N. H. 488; *Findley* v. *Hosmer*, 2 Conn. 350; *Logan* v. *Anderson*, 18 B. Mont. 114. *In Re Patton's Appeal*, 45 Pa. St. 151, it was held, in relation to an assignement made for creditors, that the unsecured creditor has no right to the benefit of the securities held by another creditor until the other's whole debt was paid. In *Allen*

v. *Danielson*, 15 R. I. 480, 8 Atl. 705, which was a case arising under an insolvent assignment, Durfee, C. J., delivering the opinion of the court, said: 'According to the decided weight of authority, the rule is to allow creditors to bring their claims in full, and have dividends accordingly.' That opinion is both well considered and able, and it deliberately overruled a prior decision of the court in the case of *In re Knowles*, 13 R. I. 90. * * *" Collateral securities not given or received as a satisfaction or postponement of the debt do not hinder the creditor, without a contract to the contrary, from making his debt out of any other property of the debtor; and, when the debtor has made a general assignment for the benefit of all his creditors, the secured creditor has the right, notwithstanding the collaterals held by him, to present his debt, and receive his *pro rata* share of the assets, and, if such share is sufficient to pay the indebtedness in full, then the collaterals are redeemed, and returned to, and become a part of, the debtor's estate; but, if such share is not sufficient to satisfy such indebtedness in full, the secured creditor has a right to such collaterals until he receives satisfaction, either out of such collaterals, or from the debtors or others interested. The right of redemption remains in the debtor, and by general assignment passes to his assignee for the benefit of his creditors. The rule in bankruptcy is different from this common-law equity rule, —made so by statutory provision that the secured creditor, if he would prove up his own debt, must surrender his collaterals; and it may be that the statutory provisions of some of the different states are to the same effect. In this state the common-law rule prevails, as above set forth. In 14 Am. & Eng. Enc. Law, 696, the law is stated to be that "marshaling will not be enforced if the paramount creditor is materially delayed or hindered in the collection of his debt, nor will it be enforced if any part of the paramount debt remain unsatisfied." *Evertson* v. *Booth*, 19 Johns. 486. And on page 698: "If the assets of a debtor are insufficient to satisfy all of his debts, a creditor who has a right to resort to a fund open to himself alone is not precluded from claiming from the fund of the estate which is open to all creditors a dividend on the full amount of his debt. He is not limited merely to a dividend on the

balance, but the total received by him cannot exceed the sum due." Equity has the same rights with regard to the collateral that the debtor has, and no greater. It cannot compel the surrender of the same until the secured debt is satisfied, nor can it prevent the secured creditor from participating in the general distribution of the debtor's estate to the amount of his debt. The circuit court therefore erred in this case in refusing the secured creditors present participation in the general distribution of the debtor's estate, and in requiring such creditors to proceed to collect and apply the collaterals to the payment of their debts before such participation should be consummated. The decree, therefore, to this extent, is reversed and annulled, and is amended so as to allow such secured creditors present participation in the general distribution, without regard to the collaterals held by them, reserving the right of future adjudication as to such collaterals on matter properly presented to the court by the trustees, creditors, or others in interest; and as thus amended it will be affirmed, with costs to the appellants out of the general fund in, or to come into, the hands of the trustees.

*Modified and Affirmed.*