## THE NEW SAVINGS BANK'S
## APPEAL FROM COMMISSIONERS ·

Superior Court     New Haven County     File No. 60100

MEMORANDUM FILED DECEMBER 16, 1941.

*Wiggin & Dana,* of New Haven, for the Appellants.

*George Crawford* and *Joseph Weiner,* of New Haven, for the Appellee.

O'SULLIVAN, J. Under the circumstances, it is not inappropriate, it seems to me, to reduce to memorandum some observations concerning the conclusions which, at the end of argument, the court orally indicated it had reached.

This is an appeal from the doings of commissioners appointed by the Probate Court for the District of New Haven, to receive, examine and decide upon a certain claim submitted by the New Haven Savings Bank to and thereafter disallowed by the executor of the will of Clifford E. Minor, deceased.

The facts, as alleged in the amended statement of claim and admitted by answer, are these: The New Haven Savings Bank is the owner of a five-year, joint and several, interest-bearing note in the principal amount of $125,000, executed and delivered to it in 1928 by Clifford E. Minor, Charles S. Longley, Eugene G. Allyn and Roy W. Foote. To secure payment, the makers mortgaged to the bank a certain parcel of real estate owned by them and located in the City of New Haven. Thereafter, on the same day, they conveyed their equity to the Longley Company, a Connecticut corporation. Four years later, the directors of this company, acting as trustees in dissolution, conveyed the property, subject to the mortgage, to Eugene G. Allyn, who still remains its owner. In 1939, Minor died. His estate is now in process of settlement as a solvent estate, it not having been represented as insolvent. Within the proper time limitation, the bank presented to the executor a claim for $125,000, representing the principal sum of the note of 1928, and for certain unpaid interest. In so doing,

the bank expressly reserved "all of its rights under and by virtue of said mortgage.... to realize upon said security and to apply the same to the satisfaction of its claim." After receiving notice of its disallowance, the bank requested and obtained the appointment of commissioners to pass upon the claim. Following a hearing thereafter held, the commissioners filed their report, allowing the claim in full, but, in addition thereto, setting forth that the cash value of the security held by the bank amounted to $250,000. The bank then took the present appeal, not, of course, from the allowance of the claim, but solely from so much of the doings of the commissioners as was concerned with the fixing of the value of the security. The vital legal question, created by the foregoing facts, and determinative of the appeal, is this: may the Superior Court inquire into and pass upon the cash value of the bank's security? The answer, it seems to me, should be in the negative.

Parenthetically, it might be remarked that the validity of the claim is not involved, for no appeal has been taken from that phase of the commissioners' doings. This procedure is quite in conformity with our practice which allows an aggrieved party to limit the scope of his appeal. *Coit's Appeal*, 68 Conn. 184; *Nowell's Appeal*, 51 id. 107. It might also be added—though the same is very elementary—that the Superior Court, which hears the matter *de novo*, is possessed of only such authority as lay in the commissioners.

It so happened that when the commissioners examined the law respecting their authority, they apparently came to the conclusion that certain statutes required of them the action they took. In so doing, they relied, it would appear, on the provision of that portion of section 4920 of the General Statutes, Revision of 1930, which states that commissioners appointed on *solvent* estates "shall have all the powers and duties concerning such claim" that are possessed by those appointed on *insolvent* estates. Among the powers and duties of the latter class are those found in section 4929 of the General Statutes, Revision of 1930, the pertinent part of which reads as follows: "If any creditor having any security for his claim against an *insolvent* estate upon any property of *such* estate shall present his claim to the commissioners on such estate, they shall inquire into the cash value of such security and report the same to the court of probate." (Italics added.) In assuming, as they undoubtedly did, that these statutes re-

quired an inquiry into and a determination of the bank's security, the commissioners pursued a course, which though pressed to adopt, I am unable to follow, first, because section 4929 is applicable only to insolvent estates, and secondly, because even if the first reason be unsound, the property upon which the security lies does not belong to Minor's estate.

The last cited statute, traceable to a public act of 1853, was designed to modify the long recognized rule, enunciated in *Findlay vs. Hosmer,* 2 Conn. 350, that a mortgage creditor of an insolvent estate could, in the first instance, establish his claim under the mortgage note, and then, after obtaining from the estate a *pro rata* dividend on the full amount of his claim, resort to the mortgage to seek satisfaction of the unpaid balance. This procedure awarded a distinct advantage to the secured creditor at the expense of those not secured, and this was of particular benefit whenever the security happened to be inadequate to pay the claim in full.

The statute changed all this. Under its provisions, if a creditor holds security, he must elect, either to surrender the security and receive the same *pro rata* dividend as all unsecured creditors must take, or to retain the security and share with the other creditors only when the security has a cash value less than the claim, and then, only on so much of the claim as exceeds such value. By this process, a fairer distribution from the assets of an insolvent was made possible. The aim of the Legislature is perfectly obvious. It was simply to assure to the general creditors a greater consideration than previously had been enjoyed, by reducing the extent to which secured creditors could "horn in" on the estate's general assets.

By no stretch of the imagination, it seems to me, can the statute be construed as one intended to benefit the estate, for, if an estate is insolvent, the most that the statute can accomplish is to make it less insolvent. Surely, no benefit flows from the fact that a thirty per cent dividend is declared rather than a twenty.

On the other hand, when the estate is solvent, no occasion arises to protect creditors of any class. The very status of solvency makes all creditors, so to speak, secured. The most that anyone is entitled to is the payment of his claim in full. No advantage would accrue to general creditors to have commissioners determine the cash value of a security held by an-

other. Nor does an estate, when solvent, gain any benefit from such a determination. If the estate is solvent, the secured creditor will be paid, and, of course, when that event occurs, the security must be returned, or if it be in mortgage form, the creditor must execute an appropriate release.

Consequently, section 4929 is applicable only as to commissioners on insolvent estates and was never intended to apply to any other. It logically follows that this court, sitting as a commissioner on a solvent estate, may not inquire into or fix the value of the bank's security.

But more destructive of the executor's position is the fact that if it be assumed that this court may examine into the security, it cannot legally exceed the extent of the limitation set forth in section 4929. This limitation finds its expression in the statute's direction that the security to be appraised must lie upon the property of the estate on which the commissioners are acting.

The mortgage held by the bank is not upon such property. It is owned by Allyn, and by him alone. As to the claim that, because of the prior activities of the present owner and Minor, some property right in Allyn's property belongs to the estate, it is sufficient to observe that that so-called property right is not subject to any mortgage held by the bank.

If prior events have created a right which the executor may enforce against Allyn, he may do so in an appropriate action, but he is not entitled to raise such an issue in this proceeding.

Judgment may enter in conformity with this memorandum, the form of which, I understand, is to be agreed upon by the parties and thereafter to be submitted to me for approval.