George H. Biggs and Daisy Biggs, Appellees, v. Hannah Obermeyer et al., Defendants. Chicago Title & Trust Company, Appellant.

Gen. No. 38,944.

80

Opinion filed October 19, 1937.
Rehearing denied November 2, 1937.

GEORGE GILLETTE, NORBERT B. TYRRELL and CARL F. FAUST, all of Chicago, for appellant.

GEORGE J. HADDAD and JAMES M. WHITESIDE, both of Chicago, for appellees.

BARNET HODES, Corporation Counsel, JOSEPH F. GROSSMAN, First Assistant Corporation Counsel and ARTHUR A. SULLIVAN, Assistant Corporation Counsel, for City of Chicago.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Chicago Title and Trust Company, as trustee under trust agreement known as Living Trust No. 16622 (hereinafter called appellant), appeals from a decree entered in a foreclosure proceeding filed by George H. Biggs and Daisy Biggs, appellees.

On September 10, 1928, complainants owned the property situated at 1435 North LaSalle street, Chicago, Illinois, described as follows: "The North half of the North half of the West half of Lot 102 in Bronson's Addition to Chicago (except that part thereof taken for North LaSalle Street and for alley)." The exception in the description refers to a portion of the lot taken many years ago for street and alley purposes. The lot was approximately 152 feet in length, fronted west on LaSalle street, and was improved with a three-story brick house. In 1925 the City of Chicago (hereinafter called the City), for the purpose of widening North LaSalle street, instituted proceedings under the Local Improvement Act for the taking of the

west fourteen feet of the lot, and an award of $9,923 was made as damages for the taking of the same and benefits in the amount of $3,607 were assessed against the remaining part of the lot. The property was then subject to a first mortgage in the sum of $4,500. On September 10, 1928, complainants entered into a written agreement to sell the real estate to Hannah Obermeyer for $30,000. By its terms she was to pay $6,000 in cash, give to the sellers her purchase money mortgage in the sum of $19,500, and accept from them a conveyance of the property subject to the $4,500 mortgage. The contract recites the facts as to the condemnation proceedings and provides that the purchaser is to get the award money and assume the assessment of benefits and also certain fees incurred by the sellers in relation to the proceedings. The sellers agree that they will ''execute any and all releases, assignments and documents and perform such acts as may be necessary to secure to the purchaser'' the award money. The contract further provides that the purchaser may make a new mortgage on the property in any amount, provided the proceeds thereof in excess of $4,500 be applied in partial payment of the purchase money mortgage, in which event the holder of the purchase money mortgage would subordinate it to such new mortgage. On December 14, 1928, pursuant to the contract of sale, complainants conveyed the tract, by warranty deed, to Hannah Obermeyer, and the latter executed and delivered to complainants the purchase money mortgage in the amount of $19,500, which is the trust deed complainants sought to foreclose. The purchase money mortgage contained a clause providing for its subordination in accordance with the provisions of the contract of sale. On December 27, 1928, final judgment was entered in the condemnation suit. Certain defendants, not interested in the instant property, appealed from the judgment, which was affirmed by

the Supreme Court on April 17, 1934. On April 4, 1929, Hannah Obermeyer made a new trust deed to Chicago Title and Trust Company, Trustee, which conveyed the land by the same description used in the deed to her and in the purchase money mortgage. This new mortgage was in the amount of $4,500 and was made paramount to the purchase money mortgage by a subordination agreement executed on May 24, 1929, by complainants, which subordinates the purchase money mortgage, as provided therein and in the contract of sale. All of the above instruments of conveyance were duly recorded. The contract of purchase, with other instruments, was placed in escrow with Chicago Title and Trust Company, in September, 1928, for delivery by the escrowee to the parties interested upon their joint order. On October 23, 1929, the $4,500 note was acquired by appellant, and it is still held and owned by said trust. It appears from the evidence that before purchasing this note appellant caused the premises to be appraised, and in making the appraisal only the land that remained after the 14 feet were taken by the City was considered. On June 4, 1929, Hannah Obermeyer conveyed the premises to Foreman Trust and Savings Bank, a corporation, as trustee under the provisions of a trust agreement dated June 4, 1929, known as Trust No. 4238. The beneficiaries under this trust were the real purchasers of the property. On January 24, 1931, the City paid to that bank, as said trustee, $4,852.21, the net amount of the compensation award after the benefits assessed and the amount of an attorney's lien had been deducted. On January 23, 1931, Foreman-State Trust and Savings Bank, successor to Foreman Trust and Savings Bank, as trustee, conveyed the condemned portion of the property to the City. On November 18, 1933, the Chicago Title and Trust Company, as trustee under the trust deed herein sought to be foreclosed by

complainants, but without direction from complainants, executed and recorded a release to Hannah Obermeyer of the 14 feet from the lien of said trust deed.

Complainants' bill sets forth, *inter alia,* the execution of the $4,500 mortgage, the proceedings in the county court in the condemnation suit, and the amount of the net award therein. The bill alleges that appellant, in its "individual corporate capacity," was, on January 24, 1931, and still is, the owner of the said note and trust deed and on that date had a lien "upon said fund of $4,852.21, and the trust deed herein sought to be foreclosed was a second lien upon said fund, subject, however, to the lien of the trust deed recorded as Document No. 10354603 [being the $4,500 trust deed]''; that "although it received notice on and prior to January 24, 1931, said Chicago Title and Trust Company negligently, carelessly and recklessly informed the City of Chicago that it had no claim to said fund, and the said City of Chicago, relying upon such information, paid said $4,852.21 to the Foreman-State Trust & Savings Bank''; that by reason thereof complainants are entitled, in equity, to insist that appellant be compelled to satisfy its claim out of said award or be forever barred from asserting or claiming a lien on the remainder of the premises. The bill prays that appellant be compelled to satisfy its indebtedness out of the portion of the premises owned by the City and that complainants have a first lien on the remainder of the premises. Appellant, the City, and certain persons were made parties defendant.

Appellant's answer, filed "as trustee under Living Trust No. 16622," claims ownership of the $4,500 trust deed note, admits the alleged facts in relation to the making of the two trust deeds and the subordination of complainants' mortgage, but denies that its trust deed was intended to cover the 14 feet taken for widening North LaSalle street; denies that it in any manner

informed the City, on or prior to January 24, 1931, that it had no claim on the award money; asserts that its trust deed was never intended to cover the 14 feet taken by the City and that appellant has no claim thereon or against the City by virtue of its trust deed; asserts a first lien upon the remaining portion of the premises, and sets forth and attaches to its answer a copy of the contract of agreement under which the land was sold to Hannah Obermeyer.

The answer of the City denies that either the trust deed owned by complainants or that owned by appellant ever covered the land condemned and taken by the City or that either created any lien on the award fund, and asserts that the award money was properly paid to Foreman-State Trust and Savings Bank.

It was stipulated that appellant had no notice or knowledge of the existence of the contract under which complainants sold the above land to Hannah Obermeyer until about October 15, 1933, except such constructive notice as might be charged to it by reason of the fact that the contract was placed in escrow with Chicago Title and Trust Company *as escrowee,* in September, 1928. It was also stipulated that when appellant became the legal owner of the $4,500 note, on October 23, 1929, it acquired and has since held the guarantee policy issued at the time of the making of the $4,500 mortgage. Further facts appearing in the record relate solely to matters and questions not involved in this appeal.

The master to whom the cause was referred found, *inter alia,* that on January 24, 1931, appellant had a first lien on the net award of $4,852.21; that such sum was more than sufficient to cover the indebtedness due it under its trust deed; that on the date of the filing of the complaint and on the date of the filing of appellant's answer the latter "had a good, prior and valid claim against the City of Chicago for the sum due

it under trust deed . . ., which sum due it was less than the net amount of the said award; that in filing its answer in this cause, denying that it had a claim against the City of Chicago for said sum and denying that the trust deed . . . is and was a lien on said award, said Chicago Title and Trust Company, in its capacity as aforesaid, had released its said claim against the City of Chicago, and that, as a result thereof, said defendant, Chicago Title and Trust Company, is estopped to assert as against complainants that its trust deed . . . is a prior lien on the East 138 feet of the premises described in said trust deed." The master found that complainants were entitled to the relief prayed for in the bill. The trial court overruled all of appellant's exceptions to the master's report and affirmed the master's report *in toto*. The decree follows the report and finds that complainants were entitled to a first lien on the land remaining after 14 feet had been taken by the City and orders a foreclosure and sale in favor of complainants in satisfaction of the sum due them under the "elevated" mortgage in the amount of $23,462.62 with interest and costs, and provides for a deficiency decree against Hannah Obermeyer in the event of a deficiency under the sale.

Appellant appeals from that portion of the decree wherein "it was decreed that Chicago Title and Trust Company, as trustee, has released any claim it might have against the City of Chicago on the net amount of the award described in said decree and resulting from the condemnation of a portion of the premises; and whereby it was decreed that Chicago Title and Trust Company, as trustee, is estopped to assert as against complainants that its trust deed . . . is a prior lien on the East 138 feet of the premises described in said trust deed." Appellant insists that upon remandment of the cause, unless complainants pay off

the former's mortgage in protection of their own secondary lien on the land, a decree should be entered finding and adjudging that appellant has a paramount lien under its $4,500 mortgage on the remaining land and directing that the land be sold subject to that lien.

While complainants argue that by the application of the doctrine of marshaling of securities equity could properly decree that they have a first lien on the proceeds of the sale of the remaining 138 feet, nevertheless, they have seen fit to file a cross-appeal, which asks ''in the first instance that said decree be affirmed,'' but prays that in case this court holds that appellant ''is entitled to a modification of the said decree of foreclosure and sale and a judgment order or decree in accordance with the prayer of said defendant and appellant in its notice of appeal heretofore filed herein, or is otherwise entitled to relief by way of review, then the said complainants and appellees pray that the Reviewing Court grant additional relief in one or more of the following respects: 1. That the decree be further modified to provide that . . . Chicago Title and Trust Company, a corporation, as trustee under a trust agreement known as living trust No. 16622, be decreed to have a lien upon the net amount of the award or judgment described in said decree and resulting from the condemnation by the City . . . of a portion of the premises described in said decree, being the sum of $4,852.21, together with lawful interest thereon, to the extent of the sum due . . . appellant upon the indebtedness secured by the trust deed recorded in the Recorder's Office of Cook County . . .; and that said . . . appellant have a decree therefor against . . . the City . . .; and that to the extent of any deficiency due the complainants after the sale of the premises ordered to be sold by the said decree of March 26, 1936, it be ordered and

decreed that . . . complainants, upon terms and con-
ditions as are just and equitable, be subrogated to the
rights of the . . . appellant . . ., as trustee under a
trust agreement known as living trust No. 16622, in
and to said decree against the City . . ., and in and
to the liens and claims of said . . . appellant on the
said award or judgment, and against the City . . .;
or that the cause be remanded . . . with instructions
to modify the decree of March 26, 1936, in accordance
with this paragraph.  2.  That the Reviewing Court
by its decree otherwise marshal the assets, securities
and liens forming the subject matter of this cause
according to equity, or remand the cause . . . for
that purpose.  3.  That such other and further order
and judgment be entered herein as to equity and jus-
tice may appertain."  In their brief complainants ask
that "if the Court holds that the decree is erroneous,
it should, in accordance with the prayer in our notice
of cross appeal, provide for a final decree granting
the Title Company a judgment against the City and
providing that the complainants may be subrogated
to that judgment upon such conditions as the Court
may properly impose."

Appellant and the City contend that the cross-ap-
peal "is inconsistent and improper."  Where a party
has obtained a judgment for everything that he
claimed in the trial court he cannot assign cross-errors
on an appeal from such judgment.  See *Bullman v.
Cooper*, 362 Ill. 469, wherein the court said (pp. 471–
2): "If a party has not obtained all that he deems
himself entitled to, he may appeal, but not when he
receives all that he claims.  (*Pelouze v. Slaughter*, 241
Ill. 215.)  The final and appealable order rendered by
the county court was that the appellee be declared
elected to the office of supervisor of the town of Kelly,
and for costs against the appellants.  No part of this
judgment was adverse to the appellee and, hence, he

was not in a position to file a notice of or prosecute a cross-appeal. On the other hand he has the right in such cases to sustain the judgment upon any ground warranted by the record irrespective of whether the particular reasons given by the trial judge or his specific findings are correct. *Stewart v. Dodson,* 282 Ill. 192; *Pelouze v. Slaughter, supra.*'' (See also *Cook v. Newbold,* 189 Ill. App. 537; *McNulty v. Hotel Sherman Co.,* 280 Ill. App. 325, 331.)

Moreover, complainants' bill does not seek a decree against the City, and the decree entered, at their instance, is entirely favorable to the City and adjudges nothing against it. The case was not tried upon the theory now advanced by complainants and the pleadings would not support such a decree as is sought in their cross-appeal. In its answer appellant disclaims any right of action against the City, and there was no issue raised by the pleadings as to whether or not the City was liable in any way to appellant. The City, in reply to the cross-appeal of complainants, strenuously objects to the entry of the decree proposed by complainants. It argues: ''(a) That the pleadings in the case and the theory on which the case was tried do not embrace any issue between said co-defendants, and the City of Chicago therefore had no occasion or opportunity to meet such issue, and (b) That the trial of such issue between said co-defendants was in no way necessary to enable complainants to obtain their rights.'' The City calls attention to the fact that complainants, by their amended bill, sought relief against the City only for the difference between the amount due under the mortgage owned by appellant and the net amount of the award, which is approximately $150, and states that the City, because of the small amount claimed, was willing to have a decree entered against it for that amount, but that the decree, entered at the instance of complainants, granted no

relief whatever against the City; that under the pleadings and the proof the City was not called upon to introduce evidence to show that it was not liable to its codefendant, appellant; that if the issue as to whether or not complainants' mortgage constituted a lien on the award had been properly presented by pleadings and proof, the City would have successfully met the issue.

There is no merit in complainants' cross-appeal, and appellant is justified in contending that by filing it and arguing in support of it, complainants practically recognize that the instant decree is erroneous. The City is satisfied, of course, with the decree.

The pertinent findings of the master and the parts of the decree following the same are based upon the theory that the doctrine of marshaling of securities applies to the instant case and supports the decree wherein it elevates complainants' second mortgage to a position of priority over that of appellant's mortgage.

"It is a fundamental and well established principle of equity that where there are two creditors standing in equal equity, one of whom has security upon two funds and the other upon only one of the two, the former is required to proceed primarily against the fund upon which the latter has no claim, and if the person having the claim on both funds, with full knowledge of the facts, releases a portion of the fund against which he alone has a claim, he thereby, so far as the other creditor is concerned, releases *pro tanto* the fund on which such other creditor has his claim. (*Boone v. Clark,* 129 Ill. 466; *Iglehart v. Crane & Wesson,* 42 id. 261.)" (*Beckman v. Alberts,* 346 Ill. 74, 78.)

Appellant contends that that doctrine has no application to the facts. Complainants failed to support the allegations in the bill that appellant caused the

City to pay out the award money and the master's finding and the decree are justified upon the assumption that appellant's answer, disclaiming any right of action against the City, constituted a release and discharge of any right of action possessed by it against the City, and that such release constituted a release of a portion of its security and works to complainants' injury unless the latter are given priority on the balance of the security, viz., the remaining land. In the bill and the amendment thereto complainants allege that they have a second lien upon the award, subject to the lien of appellant's trust deed, and pray to be adjudged entitled to such lien. The master sustained complainants in that regard.

Appellant's mortgage was made several months after the final judgment in the condemnation suit, and from the evidence it appears that in its appraisal made before the execution of said mortgage it did not contemplate acquiring any claim in the 14 feet taken by the City, or the condemnation money. Appellant contends that the equitable doctrine of marshaling of securities will not be enforced whenever it will trench upon the rights or operate to the prejudice of the party entitled to the double fund (citing *Sweet v. Redhead,* 76 Ill. 374, 377; *Friedlander v. Fenton,* 180 Ill. 312, 316; *In the Matter of Bates,* 118 Ill. 524, 530; *Drexler v. Commercial Savings Bank,* 5 F. (2d) 13), and that equity did not require appellant to pursue its doubtful claim against the City instead of the clear rights and adequate remedies afforded it by its first lien mortgage. In support of its contention that its said claim was a doubtful one appellant cites the recent case of *Feldman v. City of Chicago,* 363 Ill. 247, which holds that in condemnation proceedings under the Local Improvement Act the entry of the final judgment is unconditional; that the land is "then presumed to have been taken for public use" (p. 249)

and the City cannot thereafter abandon the proceedings, but must pay for the land. Appellant states that its attitude in not pursuing the award was based upon the legal assumption that under the decision in the *Feldman* case the 14 feet had vested in the City four months before the execution of appellant's mortgage and therefore the mortgage could not give rights to any claim against the City under the award, and it argues, that whether it was right or wrong as to the law, under the authorities and the facts it was not incumbent upon it to abandon its clear remedy under the mortgage against the remaining land and to test out its rights against the City in any action against it wherein many questions might arise. Why the City paid the award to the Foreman-State Trust and Savings Bank does not appear in the record, but it asserts, in its pleadings and in its brief, that the award money was properly paid to Foreman-State Trust and Savings Bank. Appellant further contends that its answer did not release the City from any obligation actually owed by it to appellant; that in the instant proceedings the City, while a codefendant, was not an adverse party to appellant; that there were no issues between them; that there was no consideration moving from the City to appellant for any release or discharge; that there has been no change of position on the part of the City because of appellant's answer, and that if it should appear that appellant was entitled to a claim against the award the City would not be relieved of its obligations in that regard; that even if this decree were to stand it would not bar a future action by appellant against the City (citing *Gouwens v. Gouwens,* 222 Ill. 223; *Lawler v. Schilling,* 249 Ill. App. 290), and that as there has been no release by appellant of any of its security the doctrine of marshaling of securities does not apply. Appellant raises an additional and still stronger reason why the

doctrine relied upon does not apply, viz.: "If the complainants are entitled to the second lien or claim against the City which they assert in their bill, and which the Master so finds, then any release and discharge by this defendant of any prior claim it might have on account of said condemnation money would merely remove this defendant's claim out of the complainants' way, not to their injury but to their benefit. Their claim against the City would then be a first lien or claim." The lien of a mortgage is transferred to the award money by way of substitution for the mortgaged land taken. Complainants state in their brief: "When the judgment of condemnation . . . became final on April 1st, 1930, it removed the liens of the two trust deeds from the 14 feet and transferred them to the fund. The gross amount of the judgment was $9,923.00. After the payment of two prior liens there remained $4,852.21, applicable to the payment of the two mortgages in the order of their priority. When the City erroneously paid this sum to the owner of the equity on January 24, 1931, the rights of the parties became vested." To this appellant answers: "It is inconsistent . . . for complainants to assert on the one hand that the liens of the trust deeds were transferred and became attached to the award moneys by way of substitution for the land and at the same time to contend that complainants' secondary lien would not become a first lien on the whole amount of the award the moment it should appear that this defendant had no lien thereon, whether because this defendant had waived such lien or for any other reason." If appellant had a clear lien upon the award, as complainants insist it had, but failed to make a demand for it or waived its rights to it, complainants were not thereby barred from making a claim for the award; or if appellant, by reason of the decision in the *Feldman* case, or for any other reason, had no

claim upon the award and made no claim for it, and if the City, without right, paid the award to Foreman-State Trust and Savings Bank, Trustee, nevertheless, complainants were in a position to assert whatever right, if any, they had to the fund. We must not be understood, however, as passing upon the action of the City in paying the award to said Bank.

Complainants strenuously insist that appellant has a clear case against the City for the amount of the award, which amount is sufficient to pay appellant's mortgage in full, and they argue that equity should force appellant to pursue its remedy against the City and allow complainants a first lien upon the remainder of the land; but at the end of their brief they say: *"If, however, . . . the Court is of the opinion that it will be necessary for the complainants to pay off the Title Company's mortgage as a condition precedent to subrogation, we are prepared to do so. But the Title Company is opposed to the entry of a decree granting us subrogation, even if it would be conditioned upon the complainants paying off the debt due the Title Company."* (Italics ours.) In its reply brief appellant makes the following response to the above: "It is not true that this defendant opposes complainants' right to be subrogated to whatever remedies this defendant may have under its mortgage in the event complainants see fit to pay the indebtedness due this defendant. Nor is it true that this defendant is refusing to use its mortgage to collect the award, but willingly using it to prevent complainants from collecting such award, as counsel say at the bottom of page 16 of their brief. The fact is, and it must be clear from what we said at page 25 of appellant's brief, that we have never for one moment opposed complainants' right to subrogation upon their paying this defendant's claim. *And further, if complainants really think they need an assignment of this defend-*

*ant's note and trust deed in order for them to reach the award, this defendant has at `all times been willing, and is now willing, to execute and deliver such an assignment upon being paid the amount of its claim.* . . . This defendant is interested only in the payment of its debt and will gladly assign its note and trust deed to the complainants upon their paying the amount due thereunder. If, for any reason, the complainants do not wish to rely upon their own trust deed as a basis for recovery against the City of Chicago, it would seem that the sensible thing would be for this Court to reverse the present decree, with instructions to the lower court to permit the complainants to amend and supplement their foreclosure bill within a reasonable time. The complainants will then have an opportunity in such interval to acquire this defendant's note and trust deed and to assert the same by supplemental bill. On the other hand, if complainants wish to proceed against the City under their own trust deed, they will have the opportunity to do that. This would seem to be much the more fair and equitable course. There is no good reason why this defendant, as the owner of the first mortgage on the land here involved, should be compelled to follow the course of litigation between complainants and the City of Chicago, and no good reason why the complainants, if they wish to use this defendant's trust deed for the purpose of pursuing the City, should not first be required to pay the amount due this defendant. It would be different if this defendant was denying complainants' right to subrogation or was refusing to accept payment from complainants. It might be proper in such case for the decree to declare and establish complainants' right of subrogation, but even then complainants should be required to tender or offer payment by their bill, which they do not do here. They do not by their pleadings or otherwise even assert an intention to pay

this defendant's claim and acquire its rights. We respectfully submit that the procedure suggested is most fair and proper."

The present decree must be reversed and the cause remanded, but in view of the above attitudes of the parties future proceedings in this cause should be devoid of difficulties. Complainants can acquire, by purchase, appellant's note and trust deed, and the trial court, in that event, should allow complainants to amend their pleadings so that they may be enabled to assert all of their rights thereunder. Or, if complainants wish to proceed against the City under their own note and trust deed they can do so, by apt amendments to their bill and the amendment thereto. No decree for foreclosure should be entered that does not recognize that the $4,500 mortgage, owned by appellant, is a paramount lien on the remaining land.

The decree of the circuit court of Cook county is reversed, and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Decree reversed, and cause remanded for further proceedings.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.